## D. & R. RICHARDSON *v.* THE VERMONT CENTRAL RAILROAD COMPANY.

*Liability of Railroads for injuries to adjoining land owners, considered. Consequential damages. The right of eminent domain, &c.*

Where the defendants, in constructing their railroad, made an excavation upon their own land, but so near the line of the plaintiffs' land adjoining, that the soil of plaintiffs, without any artificial weight being placed thereon, slid into the excavation, *it was held*, that the defendants were liable for the injury that the plaintiffs had thereby suffered.

But where the defendants, in constructing their railroad, raised a high embankment near to, and in front of, the plaintiffs' house, so that plaintiffs could not pass and repass *to* and *from* the same, and for this injury the plaintiffs claimed damages, *it was held*, that as the charter of the defendants only required them to make compensation for lands, which were taken for railroad purposes, they would not be liable for such *consequential damages*; and that simply the *affecting of lands injuriously*, by the construction of their railroad, was not a taking of it for public use, within the purview of the constitution; hence the railroad company were fully justified, under the authority of their charter, in building their railroad in a prudent and reasonable manner, and could not be subjected to damages resulting to individuals, whose lands had not been taken by them.

The provisions in a railroad charter, requiring them to restore a highway that they pass, to its former state of usefulness, as near as may be, are not conditions *precedent* to the company's right to cross a highway with their railroad.

The sovereign power of the State, and their right of *eminent domain*, considered and discussed.

ACTION on the case, for damages caused to certain premises in Waterbury. The declaration contained two counts; but the plaintiffs, before the introduction of any testimony, abandoned the first count in the declaration, which the court below permitted them to do, though the defendants objected thereto.

The second count in the declaration was as follows:

" Also, in a further plea of the case, for that whereas the said " plaintiffs heretofore, to wit, on the 15th day of June, 1846, were " seized and possessed of a dwelling house, barn, shed, and appur-" tenances thereto belonging, situate in said Waterbury, and plain-" tiffs had of right the right to pass to and from said house, barns, " and sheds, with teams and otherwise, to the highway leading by

Richardson et al. *v.* Vermont Central Railroad Co.

"said house and buildings; and being so thereof possessed and seized "as of fee—the said defendants well knowing the same, by their "agents, engineers and workmen, in building and grading a portion "of the Vermont Central Railroad, did dig and excavate upon the "southerly side, or southwesterly side of said piece of land, so near "to the same, a deep and wide ditch, or excavation, so that, to wit, "on the 10th day of April, 1848, the plaintiffs' land and earth fell "down and slid into said ditch or excavation, and the same was "drawn off by defendants aforesaid, by their teams and *carts*; and "the same so fell down and slid into said ditch or excavation in "consequence of said digging as aforesaid, and so near to the plain-"tiffs' house, barn and shed, that the plaintiffs were wholly and "entirely deprived from passing and repassing to and from their "said house, barn and shed, with their teams or otherwise; and also "the said defendants, by their said agents, engines and workmen as "aforesaid, did, in constructing their said railroad as aforesaid, "build and put upon the northerly or northwesterly end of said "piece of land, a high embankment, to wit, ten feet high, and near "to and in front of said house and buildings, so that the plaintiffs "could not pass and repass from their said house and barn, and "shed, on to the public highway with their teams or carriages; and "in consequence of said ditch or excavation and said embankment, "the plaintiffs' said house, barn and shed, became and were render-"ed wholly worthless to them. To the damage," &c.

March Term, 1852, of the County Court,—POLAND, J., presiding,—the case, under a plea of the general issue, was tried by jury.

On trial, the plaintiffs introduced evidence, tending to prove that for several years previous to the 23d day of April, 1851, they were owners of a certain house lot, in the village of Waterbury, (being the same mentioned in the declaration,) situated on the east side of the Stowe road, leading north from Waterbury street, and lying on the north side of the track of the defendants' road. That the plaintiffs' lot was about six rods wide in front, upon the Stowe road, and extended back from twelve to fifteen rods; and upon said lot was a one story dwelling house, standing the end towards the Stowe road, and within about six feet of the east line of said road; and there was a passage of about twelve feet wide, between said house and the south line of the lot, which had always been used as a pass to the barn, wood-shed and back part of the house on said pre-

mises. That these buildings were erected upon the lot, in the year 1835, and had been used and occupied in this manner ever since, but there were no buildings on the lot prior to 1835.

That the defendants, before constructing their said railroad, purchased the lot lying directly south of the plaintiffs, and made their road entirely on that lot, but immediately adjoining and close to the south line of the plaintiffs' lot. That the defendants made a cut or excavation for their railroad, about twelve feet deep, and nearly perpendicular, quite up to the plaintiffs' line at the southwest corner of their lot, and for some distance east on that line; in consequence of which excavation, about three feet of the edge of the plaintiffs' land had fallen off into the cut, and the passage by the south side of plaintiffs' house was narrowed to about nine feet from the house to the edge of the railroad cut.

The plaintiffs' evidence tended also to prove, that the defendants extended their excavation across the Stowe road, and for the purpose of carrying said road over their railroad, erected a bridge above the railroad track, some ten or eleven feet higher than the former surface of the road at that place, and also built embankments north and south of said bridge, to enable travelers to pass over it. That the embankment north of said bridge extended by the whole front of the plaintiffs' premises, from ten to six feet in height; and that the sides of the same were built up of stones and timber, and the distance, from the front end of plaintiffs' house to the eastern side of said embankment, was some seventeen or eighteen feet. That by reason of the building of said embankment in the highway, it was rendered extremely difficult to get from the highway to the plaintiffs' premises, especially with a team, and in consequence of the nearness of the embankment, and the narrowing of the passage, on the south side of the plaintiffs' premises, it was made difficult and inconvenient to pass by the house to the barn and back-buildings, with a team, and that in consequence of these acts of the defendants, the value of the plaintiffs' premises was much diminished.

That the plaintiffs sold and conveyed said premises, by deed executed the 23d day of April, 1851. It did not appear that the raising of the highway in front of plaintiffs' premises was unnecessary, or that it was unskilfully or improperly done, nor that the said alteration of the highway had ever been accepted by the select men of the town of Waterbury.

The defendants insisted, and requested the court to charge the jury, that the defendants had acted properly and within the privileges granted by their charter, and were not liable for such incidental and consequential damages as the plaintiffs had sustained; as no such liability was imposed by their charter; and also, that the plaintiffs could not legally recover any damages, except for the loss occasioned to them by the temporary inconvenience to their passway, during the time they continued to own the premises.

The court declined so to charge the jury, but did charge them, that if they found the facts as the plaintiffs' evidence tended to prove them to be, the plaintiffs were entitled to recover for all the damage and decrease in value of said premises, occasioned by raising the said highway and caving off of the earth from plaintiffs' premises into the railroad cut, during the time the plaintiffs were owners of the premises; and that the damages should not be restricted to the mere inconvenience and loss in the *use* of the same, while the plaintiffs continued to be the owners. The jury were also instructed that the plaintiffs were not entitled to recover for any damages or decrease in value to said premises in consequence of the close proximity of the said railroad, except so far as it actually interfered with, and disturbed the soil of the plaintiffs' premises.

The jury returned a verdict for the plaintiffs. Defendants filed a motion in arrest of the judgment, for the insufficiency of the plaintiffs' declaration. The court overruled the motion. To which defendants excepted; and also to the charge and refusal of the court to charge, as above detailed.

*Peck & Colby* for defendants.

If the defendants, while pursuing the reasonable exercise of an established right, have caused injury to the plaintiffs, the law regards it as a misfortune, for which they are neither liable at law, nor in the *forum* of conscience. *Panton v. Holland,* 17 Johns. 92—100. Broom's Legal Maxims, 132. 2 Wheaton, 350. *Gov. & Co. Brit. Cast. Manufactures* v. *Meredith,* 4 Term R. 794. *Callender* v. *Marsh,* 1 Pick. 418. *Boston and Roxbury Mill Dam Co.* v. *Newman,* 12 Pick. 467. *Benedict* v. *Coit,* 3 Barbour, 459. *Hay* v. *Cohoes Co.,* 2 Comstock 159. *Acton* v. *Blondell,* 12 M. & W., 351. *Thurston* v. *Hancock,* 12 Mass. 220. Sedgwick on Dam-

ages, and Notes 110, 111. *Runnels* v. *Bullen*, 2 N. H. 532. *Boulton* v. *Carouthers*, 2 B. & C. 703. Rolli's Abridgment, 565. *Baptist Church* v. *Schenectady & Troy R. R. Co.*, 5 Barbour, 79. *Parker* v. *Cutler Mill Dam Co.*, 7 Shep. 353. *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 472–3. *Mayor of Albany* v. *Cauliff*, 2 Comstock, 173.

Supposing the company had done nothing towards *bridging* and *restoring* the highway, the effect would have been, that the town would have restored the same, and collected of the company the expenses of such work. Could the plaintiffs then have recovered damages of the town for raising the highway opposite their premises?

*Benedict* v. *Coit*, 3 Barbour, 459.

*P. Dillingham* and *M. H. Sessions* for plaintiff.

1. The injury done to plaintiffs' door yard, by the excavation made by the defendants, whereby the defendants caved off the earth, furnishes a good ground of recovery. *Thurston* v. *Hancock*, 12 Mass. 220. Stephens' N. Prius 1011. *Jones* v. *Bird*, 5 B. & A. 837. *Walters* v. *Pfiel*, M. & M. 364. *Wyatt* v. *Harrison*, 3 *Harrison* B. & A. 875.

2. The long and high lateral embankment put up by the defendants in front of plaintiffs' house, which hindered and impeded their convenient use of it, and thereby greatly lessened its value, was an injury for which the plaintiffs have a remedy. 6 Hill, 61. 3 Hill, 567. 3 Cushing, 107. 25 Wendell, 462. 5 Hill, 170. 7 Barbour, 508. 3 English Law and Equity, 59. 4 English Law and Equity, 265.

3. It is contended by defendants, that by virtue of their act of incorporation, they are let into all the rights of the town, in the highway in question.

If this proposition were true, it would not follow that our action could not be maintained.

When a highway is once laid out, made and opened, what right has the town in it? The town must make their highways safe and convenient for travelers. To do this, their highway surveyor may reduce hills and fill up low places; in which duty he must act with discretion, for he acts at his peril. If he go beyond, and act wantonly, it is an excess of jurisdiction, and he will be liable to any

Richardson et al. *v.* Vermont Central Railroad Co.

one injured. *Benedict* v. *Coit,* 3 Barbour 459. *Callender* v. *Marsh,* 1 Pick. 428. 4 Term R. 794. 12 Mass. 220. 17 Johns. 100.

Now, had the highway surveyor, in the pretended exercise of his duty, acted so wantonly, as to have put the same embankment in the old highway that the defendant has, he would not only have been liable to the plaintiffs, in this suit for their injury, but the embankment would have been subject to be abated as a *nuisance.*

4. The defendants have no right to cross this highway, but upon the condition of restoring it to its former state and usefulness, to the acceptation of the select men of the town, or in case of their refusal, to the acceptance of the commissioners. This the defendants have never done, and until done, they have no justification for the injury to these plaintiffs.

The opinion of the court was delivered by

BENNETT, J. This is an action on the case, and two questions are involved in the decision, which we are called upon to make. The case comes up, upon exceptions to the charge of the court below, and also upon the decision of the court upon the motion in arrest, for the insufficiency of the declaration, but the questions are substantially the same.

The first question which we shall consider is, whether the plaintiffs are entitled to recover damages, by reason of the defendants' having made their excavation, in building their railroad, on their own land, so near the plaintiffs' land as to occasion a portion of their soil to slide into it. If this is an *actionable* injury, this court, as a court of law, cannot measure its extent. There is no pretence, that the railroad company, in digging the excavation on their own land, were in the wrong; neither in so doing, did they remove any of the plaintiffs' soil directly; but the *slide* was a consequence of it. It is a familiar law, that if a man build his house so near the line of his adjoining neighbor, that it falls, in consequence of his neighbor's digging an excavation on his own land, still no action lies for the house.

This principle results from the fact, that a man has an entire dominion over his own soil, and of the space above and below, to any extent he may choose to use it, unless restrained by some covenant, or a counter *user,* for such a time as to warrant the presumption of a grant. The maxim, *"sic utere tuo, ut alienum non laedas,"*

will not apply, for the reason that your neighbor has no rights to injure. The damages in such case are adventitious, and arise from the fault of the party himself, in putting his house so near the line. If there was a want of due care and precaution, a different result would follow, provided the injury resulted from the want of them. *Vaughn* v. *Menlove*, 3 Bingham, N. C. 464. *Frover* v. *Chadwick*, 3 Bingham, 334, and *Jones* v. *Bird*, 5 B. & A. 837. The case of *Whitcomb* v. *Vermont Central Railroad Co.*, decided at the last circuit session at Burlington, went upon this ground. If the house which was undermined had been an ancient one, so that a *prescriptive right* had been acquired to have it stand upon the line, the maxim, *sic utere*, &c., would well have applied.

In the case before us, the plaintiffs' soil has slidden into the ditch, and though the damages may be small, still the inquiry is, have the plaintiffs sustained an *actionable* injury. It should be remarked, that they have not laid upon the soil any additional or artificial weight, which facilitated the *slide*; but it was purely the result of the defendants' own act. The leading case in Rolli's Abridgement, (§65) holds, that if the house with its foundation, (not being an ancient one,) falls, in a case like the one supposed, still no action lies; yet the Reporter adds, " if my soil slides into the pit, an action will lie for this." The distinction made by the Reporter, may seem at first shadowy, but, we apprehend, it is sound and substantial.

The injury is, in depriving the owner of a portion of his soil, to which his right was absolute. In the other case, no right is violated, and the injury is the result of the party's own folly, and it may well be said to be *damnum absque injuria*. The distinction alluded to, as made in Roll, was acted upon in *Thurston* v. *Hancock*, 12 Mass. 220, and regarded as sound. See *Hays* v. *Cohoes Co.*, 2 Comstock, 159, where the same distinction is made and recognized by GARDNER, J. The right of action in such a case does not depend upon negligence. The natural state of the soil has been disturbed, a right violated, and the person causing it must answer for that which is but the natural, if not the necessary, consequence of his act. In *Wyatt* v. *Harrison*, 3 B. & A. 871, it is added, by way of a *query*, whether an action would not have lain, if the complaint had been that the digging had occasioned a falling in of the soil of the plaintiff, to which no artificial weight had been applied. If there is any error in the decision of the case, in the 12 Mass., it is, I appre-

hend, to be found in the court's not discriminating between the soil, that fell into the excavation from its own inherent weight, and that which was pressed in by the house. If then the defendants stood as an individual, owning the adjoining fee, we think they could not defend successfully this part of the claim for damages; and can this corporation stand in a more favorable point of view? They cannot justify the removal of the plaintiffs' soil, from any powers attempted to be conferred upon them, either by their charter, or the general railroad law; and in *Glover* v. *North Staffordshire Railway Co.*, 20 L. T. Q. Bench 376, and in 15 English Jurist 673, it was held, that if a railway company does that which would be an *actionable injury to land*, (unless done under the powers conferred by their act of incorporation,) the owner or occupier is entitled to compensation. So far then, the defendants cannot complain of the charge of the court below.

The more important inquiry is, whether the defendants can be mulct in damages, for extending their excavation across what is called the Stowe road, and the raising of the embankments, for the purpose of carrying the road over the railway by a bridge, that the road might be restored to its former usefulness, by reason of which the plaintiffs were damnified with reference to their house and lot opposite to the road. It does not appear in this case, that the railroad passed over any part of the plaintiffs' land, but passed over the defendants' land, and across the adjoining highway, the fee in the soil of which, it is not alleged in the declaration, belonged to the plaintiffs, neither does it appear from the exceptions, that such was the fact, and the action was evidently not predicated or tried upon any such supposed state of facts. Though it may be true, that where a highway passes between the land of A. and B., the presumption *prima facie* is, that each owns to the centre of the road; yet this is only a presumption of fact, and not of law, so as to become a rule of property, and may at all times be rebutted, and is doubtless founded upon the supposition, that they originally owned the land taken for the highway *equally*. The declaration is, that the plaintiffs were possessed of a dwelling house, barn, shed and appurtenances thereto belonging, situate in Waterbury, and that the plaintiffs had the right to pass to and from the same, to the highway leading by said buildings; and that the defendants, in building and grading a portion of their railway, exca-

vated the earth upon the southerly, or southwesterly side of said piece of land, so near the same that the plaintiffs' soil slid into the excavation, and they were prevented from passing to and from their house, barn and shed.

The declaration further states, that the defendants, in constructing their railway, raised upon the northerly or northwesterly side of said piece of land a high embankment, &c., near to, and in front of, the house and buildings, so that the plaintiffs could not pass and repass *to* and *from* their house, barn and shed, with their teams, &c., into the public highway, by reason of the defendants' excavation and embankment, and they were rendered worthless thereby, &c.

The evidence showed, that the plaintiffs' house lot was on the *east side* of the Stowe road, and lying on the north side of the track of the railroad; and the injury, which the evidence tended to show, was first, the falling of the soil from the plaintiffs' land into the excavation, by which the passage on the south side of the house on the plaintiffs' land was narrowed from twelve to nine feet from the house to the edge of the railroad cut; and secondly, the egress to and from the house, and other buildings, *to* and *from* the highway, was obstructed, and rendered difficult, by reason of the embankment built in the highway; and the passage on the south side of the house with teams, rendered difficult by reason of the slide, occasioned by the cut on that side. The damages alleged and proved are purely *consequential* to the making of the cut upon the defendants' *own* land, and the building of the embankment *in the highway*. If the injury from the embankment consisted in building it upon the plaintiffs' land, of which they had fee, subject only to the public easement, it should have been so alleged, and then the question would have arisen as to the constitutional power of the Legislature to authorize a railroad company to construct their road on or across a public highway, without making further compensation to the owners of the fee in the highway. If they had no such power, the act would have been *void*, and the defendants trespassers. In no case where the Legislature have authorized a railroad company to construct their road on or across a public highway, without making further compensation to the owners of the fee in the highway, to construct their road across a highway, have they, that I am aware of, required *additional compensation* to be made to the adjoining land owners, unless such cases may be brought

XXV.      31

within the general provision for assessing damages, where lands have been *taken* for the purposes of a railroad, of which I have much doubt. The Legislature might have considered a railroad but as a *public highway*, though to be used in a particular manner, and that in the exercise of their right of *eminent domain*, they might take private property for the purposes of a railroad, whether to be constructed by the State, or a chartered company ; and that when the State are possessed of a public highway, the Legislature might modify or change the mode of using it, without in such case subjecting themselves, or those acting under their authority, to the payment of a further sum in damages for the easement; and that in principle, it was immaterial, whether a common highway was changed to a turnpike or a plank road, or a railroad, and that in either case, the easement was used by the public for the purpose for which it was originally acquired, though in a more beneficial form. But the present case does not raise the question, and of course we do not express any opinion whether the sovereign power of the State can, under our constitution, change the use of a common highway to a railway, without making further compensation to the owners of the fee of the highway, as doubtless the use of the way might be rendered more *onerous* to the adjoining proprietors, in many instances, by grading, than it was while used as a common highway.

It is a serious question, whether the owner of the fee in the common highway, and in the adjoining lands, must not hold it subject to the paramount authority and right of the State to improve the highway by grading and otherwise, so as to render it more suitable to the public wants than when first constructed, and be subject also to the improved modes of constructing and using public ways, whether as plank roads or railroads.

Though the case before us may have taken a more extended argument by counsel, than the recent case of *Hatch* against this same railroad company, decided at the last circuit session of this court, holden at Burlington; yet we think, in this point, this case is the same in principle with that. In neither has there any lands been taken for railroad purposes, belonging to the plaintiffs, and both are actions for *consequential damages* to premises adjoining the public highways, which the railroad crossed.

It was settled in that case, that as the railroad charter only re-

quired the company to make compensation for lands which were taken for railroad purposes, and did not, as in England and in many of the States, require damages to be paid for lands which were *injuriously affected,* they could not, by the terms of the charter, be responsible for such *consequential damages ;* and that the Legislature might, in their exercise of the right of *eminent domain,* take private property for the use of the public; and that they were not required in a case like that, by the terms of our constitution, to make compensation, for the obvious reason, that simply the *affecting of land injuriously,* by the construction of their railroad, was not a taking of it for public use, within the purview of the constitution; and consequently the railroad company were fully justified under the authority of their charter, in building their rail road in a prudent and reasonable manner, and could not be subjected to damages resulting to individuals, whose lands had not been taken by them. I do not feel called upon to vindicate the soundness of that decision. Neither shall I enter into the reasons or the authorities upon which it was founded. Suffice it to say, that has been fully done by the Chief Justice, and I will only add, that the decision is, in my view, according to the adjudged cases. I may be permitted, however, to state, that since the argument of these cases and the decisions agreed upon, I have seen a recent English case, *Berkinshaw* v. *Birmingham & Oxford Junction Railway Co.,* reported in the 6 Railway Cases, 609, which is in point, in relation to the construction which we have given the defendants' charter. The English statute is, " if any party shall be entitled to any compensation, in " respect to *any lands,* or of *any interest therein,* which shall have " *been taken* for, or *injuriously affected,* by the construction;" &c. In the case in the 6th Railway Cases, it was held, that " *lands taken,*" in that section of the statute, *mean those, and only those,* which are taken into the actual possession of the company. There is no allegation in the present declaration, that the defendants constructed their railroad in an improper manner, or were wanting in due care, and nothing of the kind appeared in evidence, as the bill states.

We do not apprehend the plaintiffs can sustain this action, because it did not appear on the trial, that the alteration of the highway had ever been accepted by commissioners appointed for that purpose, or by the select men of Waterbury. Neither the restor-

ing the highway to its former state of usefulness, as near as may be, or causing the same to be accepted, are conditions precedent to the defendants' right to cross the highway with their railroad. If, however, they have failed to do it, the company or their agents might be liable probably to an indictment for a nuisance; and the plaintiffs, if they had suffered special damages peculiar to themselves, by the obstruction of the highway, might have their special action for it; but we cannot well see how it could aid the plaintiffs to maintain this suit. We see no reason why the declaration is not good for so much as is actionable in it. The motion in arrest was rightly disposed of in the court below; the declaration might have been met, so far as the matter was not actionable, by a demurrer.

The judgment of the county court must then be reversed, and the case remanded for a new trial.