## WHEELER *v.* WILDER.

The defendant's race-way for his mill is upon land of the plaintiff, and is held by a grant in a deed made in 1821, conveying a right to cut a canal through the land to carry the water from the mill to the river, "to be of sufficient width to carry the water, with the right to dig the same one rod and one fourth if needed." The owners of the mill cut a canal a rod in width, and used it for over fifty years, the owners of the plaintiff's land during all the time occupying and using the land to the banks of the canal. This is not conclusive evidence of an election of a canal of that width, or of a location of the easement binding upon the owner, nor, as a matter of law, an abandonment of the right to cut a canal of the full width of the grant, if needed for the use of the water-power.

The widening of the canal, by the defendant, to the full width of the grant, if reasonably necessary for the use of the whole water-power, is not an invasion of any right of the plaintiff for which he can recover.

If, in widening the canal to the full width of the grant, the defendant has thrown and left the earth excavated upon the banks of the canal, he is not liable for damage to the plaintiff, if depositing the earth there was reasonably necessary in constructing the enlargement.

If the banks of the canal have fallen away through the action of the natural elements of frost and rain, and not through faulty construction, the defendant is not liable.

TRESPASS, *qu. cl.* Facts by a referee. The defendant owns a mill, with water-power and privileges, upon the Contoocook river in Peterborough. The race-way of the mill is a canal discharging into the river over eighty rods below, and, excepting for a short distance near the mill, is upon the plaintiff's land. In 1821, Steele, owning both the plaintiff's and the defendant's land, conveyed to the Peterborough North Factory Company the factory premises and water-power, together with the right to cut a canal to carry the water from the factory through his land from a short canal near the mill to the river, "said canal to be of sufficient width to carry the water, with the right to dig the same one rod and one fourth wide if needed." The defendant now owns what was conveyed by Steele's grant, and the plaintiff owns the land through which the,canal has been constructed. Soon after the conveyance in 1821, a canal was made of the width of one rod, and was used as a race-way to the mill, continuously, until 1874, when the plaintiff cleared out the sand and gravel with which it had become obstructed, and filled up the short canal, so that all the water from the mill passed through the canal upon the plaintiff's land. In 1873, the defendant built a saw-mill adjoining the factory, and

added one water-wheel, the water for its operation being furnished from the factory mill-pond, and being carried away in the canal. In 1878, the canal not being of sufficient capacity to enable the defendant to make use of all his water-power, he widened the canal about four feet and deepened its channel about two feet for a distance of thirty rods from its mouth, and threw the earth excavated by such widening and deepening upon the canal bank in a mound. This earth is not suitable to spread upon tillage land, and is an incumbrance to the plaintiff. The widening and deepening of the canal were necessary for a reasonable use of the defendant's water-power. By the action of the frost and rain, the banks of the canal, in places, fell off after the widening. The plaintiff claims damages for widening and deepening the canal, for throwing the earth upon the bank of the canal and leaving it there, and for the falling in of the banks. The plaintiff also claimed damages for the defendant's digging and carrying away the soil, and undermining the plaintiff's buildings on a tract of land west of the mill, the title to which was in dispute. The referee found the title to a part of the tract in the plaintiff and a part in the defendant, and assessed damages for the defendant's invasion of the plaintiff's part.

*E. M. Smith,* for the plaintiff. The case raises three questions:

1. Had the defendant a right to widen and deepen the canal beyond its width and depth as originally made?

2. Had the defendant a right to place and leave the materials, taken from the northerly end of the canal, upon the adjacent banks on the plaintiff's land?

3. Had the defendant a right to widen the canal so that it should be one and one fourth rods wide at the surface of the ground? and if he did it, was it incumbent on him to so leave the banks that they should not cave off?

The first question presented in this case will be decided, we think, by the construction given to the original conveyance of the canal to the Peterborough North Factory Company in 1821, and the manner in which said canal has been used for more than fifty years. After describing the location of the canal in the deed, the following words are used: "Said canal to be of sufficient width to carry the water, with the right to dig the same one rod and one fourth wide if needed." The plaintiff claims that after the company had dug their canal, and it had been used for more than fifty years the same width that it was dug, the plaintiff and those under whom he claims having improved and occupied the adjoining land on each side, during all that time, up to the edge of the canal as dug, left and used by said company, the company by those acts elected the width that was needed for said canal. The plaintiff also claims that if by these acts of the company they elected the width needed for said canal, and allowed the plaintiff, by improving and occupying the adjoining land to the edge of said canal, to gain rights to

said land, the defendant should not now be allowed to dig said canal deeper and wider than it was originally dug and used for more than fifty years.

The defendant, in widening and deepening the canal, placed the materials taken from said canal upon the adjoining banks on the land of said plaintiff, and left them there. This land of the plaintiff was grass land, and the materials left upon it were mostly gravel and stones, and were not suitable to spread upon the adjoining land or to be put to any beneficial use by the plaintiff, and are an incumbrance to the land where they now lie. The express grant of an easement is accompanied by certain secondary easements necessary for the enjoyment of the principal one. Such a right carries with it the implied authority to do all that is necessary to secure the enjoyment of such easement. But while this principle is true, it imposes an obligation upon the defendant to exercise this privilege in a reasonable and proper manner. It is to be done in such a manner as shall cause no unnecessary damage to the plaintiff. Ang. Wat. 285, *s.* 163; *Prescott* v. *White,* 21 Pick. 341; *White* v. *Chapin,* 12 Allen 521, 522. If the material is not useful, it would be the duty of the defendant to remove it off the land of the plaintiff in a reasonable time and in a manner the least prejudicial to the plaintiff. *Brisbane* v. *O'Neall,* 3 Strob. 348; *Brown* v. *Bush,* 45 Penn. St. 64–76. Applying these principles of law to the facts as found in this part of the case, the defendant is liable for incumbering the land of said plaintiff, and for not removing said incumbrance from said plaintiff's land.

In the third question raised, we will admit, for the sake of the argument, that the defendant got a right under the terms of the deed to dig the canal, at any time he saw fit, to the width of one and one fourth rods at the surface of the ground. The case finds that he dug the canal without any regard to the adjoining land of the plaintiff, and without protecting the banks on either side; that he even burdened the banks with the weight of the gravel and stones thrown out and left on said banks, and that as a consequence the banks are caving off. The plaintiff is no ways in fault for the banks' caving off, he not having burdened the banks in any way, or done anything to change their natural condition. While the defendant might have a right to dig up to his.line, we claim that he is bound to protect the banks of the canal in such a way as not to injure the adjoining land of the plaintiff. *Thurston* v. *Hancock,* 12 Mass. 220; *Farrand* v. *Marshall,* 19 Barb. 380; *Lasala* v. *Holbrook,* 4 Pai. Ch. 169; 1 W. N. C. 23 (Penn.); *Bell* v. *Reed,* 31 Leg. Int. 389 (Penn.).

*G. Y. Sawyer & Sawyer, Jr.,* for the defendant. I. The material thrown out in clearing and enlarging the canal was rightfully placed upon the adjoining banks. The original grant was of a right " to cut a canal through my land  *   *  of sufficient width

to carry the water, with the right to dig the same one rod and one fourth of a rod wide if needed." This implies a right to deposit the material dug out upon the adjoining banks. This is not the case of a right acquired by prescription, but by express grant produced. The grantor in such case could have restricted the exercise of the right by any conditions which he pleased to annex to the grant. Thus, he might have stipulated that the whole extent in width and depth to which the canal was to be dug should be done at once, and not at intervals; that the material thrown out in digging should be removed from the adjacent banks, or not thrown upon the banks at all, but removed directly from the canal; that the banks should be walled up or otherwise secured against the action of frosts and rains and the like. But no such restriction is annexed to the grant in this case. Nor is this the case of a natural easement, which the owner of a mill-privilege above has in the land below, to have the water flow from his mill in the natural stream, in which case the right of the mill-owner to enter upon the land below and clear out the stream is to be exercised within the strictest and narrowest limits. Such is the case of *Prescott* v. *Williams*, 5 Met. 429, in which the court say such a natural easement is to be considered a privilege arising from the necessity of the case, like a way of necessity, to be enjoyed only when the party has no other reasonable way of enjoying the principal easement. Here the factory company bought and paid for the easements granted for use of themselves and their assigns, and the grant is to be taken most strongly against the grantor. It must be understood that the compensation paid for the grant covered all damages to the land-owner, occasioned by the reasonable and proper use of the adjoining land, in constructing and keeping the canal in repair. All secondary easements necessary to the complete enjoyment of the primary one are conveyed by the grant, though not specified. Thus, the grant of a right to dig a canal through the grantor's land carries with it a right of way into and along the land adjacent for constructing and repairing it, because such a right is reasonably necessary to the enjoyment of the principal easement granted. But it is no more absolutely necessary than the right to deposit the material dug from the canal upon its banks. A canal even eighty-four rods long may be dug and repaired, with a mere right of entrance and exit at each end. But it would be unreasonable to hold the grantee bound to such strict and narrow limits when the grantor had not stipulated for them, and especially when the usual way of digging a canal such as this, through the pasture or meadow land of the grantor, has been to use the adjoining land for passing and repassing and for depositing upon it the waste material, and in the early stages of the work of constructing the canal this way was assented to or acquiesced in as the proper mode of proceeding.

The case of *Prescott* v. *White*, 21 Pick. 341, cited in the plaintiff's brief, is an authority directly in point to sustain the propo-

sition that a mill-owner, having a race-way from his mill through the land of another, has the right to enter upon the adjoining land, clean out the race-way, and throw the materials so cleaned out upon the banks. That case, like this, was trespass *qu. cl.*, by the land-owner through whose land the race-way of the mill ran, against the mill-owner for entering to clear out the race-way and throwing the materials on the banks; and the only point presented in the case argued by counsel or decided by the court was, whether he had the right to enter for that purpose and dispose of the materials in that way. It is true that the chief-justice, in delivering the opinion, made some suggestions—mere *dicta*—as to what the law is in respect to placing the materials on the bank for the use of the land-owner if of value to him, and removing them if of no value. The case called for no opinion of the court upon those points; and the judgment of the court was, that the mill-owner had the right to place the materials on the bank, that being the ordinary and usual method, without inquiry as to whether they were valuable to the land-owner or not. The matter thrown up, in digging a new canal or cleaning out an old one through the land of another, belongs to the land-owner. It does not become the property of the mill-owner merely by his acquiring the right to dig and maintain the canal; and surely he is not called upon to decide what of the material thrown up is worthless to the land-owner and what valuable, at the peril of being held a trespasser if he remove what is of value to the owner, and equally so if he does not remove what is worthless to him. Stones and gravel, under some circumstances, may be of more value to him than so much bulk of top-dressing or compost, for agricultural purposes; and it cannot be the duty of the grantee, in a case like this, to judge at his peril what of the material is of value to the owner and what not, and then to sift the one from the other.

II. A canal is defined to be an artificial passage for water. In common parlance, it is applied indiscriminately to a ditch for conducting the water to or from a mill, and to a water way for transportation by vessels. Applied to the race-way for conducting the water from a mill, it does not *ex vi termini* import walls to support the banks other than natural earth through which it is dug; and the grantor not having stipulated for any other support, the grant in this respect is to be construed most strongly against him. It is found by the referee, that in order to the defendant's having a reasonable use of his water-power, it was needed that the canal should be widened and deepened as has been done. This is precisely what the grant authorizes,—"the canal to be of sufficient width to carry the water, with the right to dig the same one rod and one fourth (20⅔ feet) wide if needed." The meaning of this must be held to be, sufficient and needed for the reasonable use and development of the water-power; and the expression, "if needed," implies that the digging of the canal to the extreme width limited was not

necessarily to be done at once, but at intervals, so that, upon testing its sufficiency or insufficiency as originally dug, it might be dug wider if found to be needed. The grantee was not bound to protect the banks as originally dug from the action of the elements; and the parties to the grant assented to and acted upon that view. What is there in the terms or nature of the grant to impose that obligation upon the defendant as to the banks of the canal as enlarged? Assuming, however, that he was bound thus to protect them, he is not a trespasser for omitting it; and whatever damages may have resulted to the plaintiff on this account are strictly consequential, and to be recovered, if at all, upon a proper declaration adapted to such case.

ALLEN, J. The conveyance, under which the defendant justifies the acts complained of, was the grant of an easement, upon land held by the plaintiff, to dig a canal of sufficient width to carry away the water from the defendant's mill, and to be one and one fourth rods wide if needed. No question is made of the grantee's right to go upon the plaintiff's land, and in a suitable manner dig the canal, and subsequently, from time to time, make necessary repairs upon it. The construction of the canal originally of the width of a rod only, and its continuous use of that width by the successive owners of the mill for more than fifty years, taken in connection with the occupation of the land for beneficial uses up to the banks of the canal, by the plaintiff and those under whom he claims, during the same time, is made the basis of a claim by the plaintiff to hold exclusive possession of the land up to the lines of the canal as originally constructed. It is not a claim that the plaintiff by prescription has acquired the right against the defendant to the additional four feet, but that the defendant's grantors having constructed the canal of only a rod in width, and having acquiesced in the occupancy of the land up to that line by the plaintiff and his grantors, an election and practical location of the boundaries of the easement were made, and the defendant could not lawfully enlarge them.

The defendant's grantors and those who owned the plaintiff's land might have agreed upon the limits of the canal and easement, and if such agreement had been made it would now be binding upon the defendant. *Sawyer* v. *Fellows*, 6 N. H. 107; *Orr* v. *Hadley*, 36 N. H. 579; *Dudley* v. *Elkins*, 39 N. H. 78. The possession of the plaintiff and his grantors, long continued, up to the line of the old canal, and the acquiescence of the owners of the easement, was evidence from which the referee might have found an agreement to a line, but it was not conclusive. *Hobbs* v. *Cram*, 22 N. H. 130, 134; *Knight* v. *Coleman*, 19 N. H. 118. If the canal was constructed of a less width than the grant permitted, for convenience or for a temporary purpose, and with no intention to fix a limit to the necessities of the mill or the use of the water-power, the plaintiff's possession was not evidence of an agreed line. *Clough* v. *Bowman*,

15 N. H. 504, 511. The referee has not found an agreed line for the canal and easement, nor inferred one from possession and acquiescence. Nothing in the grant limited the necessities of the mill to anything short of the whole water-power; and the right to dig a canal of the full width of one and one fourth rods was not narrowed by digging one of less width, sufficient for the wants of the mill at the time. Within the limits of the grant the plaintiff's right of occupation was dependent upon the necessary use of the land for canal purposes, and necessity might at any time, as it eventually did, require the whole extent of the grant. The water-power was not restricted in the grant, nor any part of it lost by abandonment or a failure to use the whole supply. So long as the water-power was a part of the mill property, and its entire use required the whole canal right which was appurtenant to the mill, no part of that right could be lost by non-use. A canal of the width of the largest limit named in the grant being found reasonably necessary for the accommodation of the mill and water-power, its extension to that limit was a right lawfully exercised by the defendant.

The plaintiff claims that the defendant, in depositing the earth taken from the canal, in its enlargement, upon the banks, is guilty of a wrong for which he is entitled to recover. The grant of the easement gave the right to dig the canal as wide as it has been made. The right to dig the canal was a right to remove the earth somewhere. It was not a grant of a definite tract of land with fixed limits within which a canal might be constructed, but a grant of the right to construct a canal of given width, and this was a grant of the easement in sufficient land for that purpose. The right to dig the canal was a right to throw out the soil, and by necessity it must be thrown beyond the limits fixed for the canal, and that would be upon other land of the grantor of the easement. No restriction being placed upon the mode of constructing the canal, nor limits fixed for the deposit of earth taken from the channel, the grant carried with it whatever was necessary for its reasonable use and enjoyment. *Cocheco Manf. Co.* v. *Whittier*, 10 N. H. 305; *Bean* v. *Coleman*, 44 N. H. 539; *Appleton* v. *Fullerton*, 1 Gray 186; *Brown* v. *Stone*, 10 Gray 65. To enjoy the right of digging the canal, there was the reasonable necessity of throwing the excavated soil upon other land of the grantor. Whether it was reasonable for the defendant to leave the earth, thrown from the canal, upon the banks, is a question of fact depending upon the objects and purpose for which the easement was granted, the extent of the grant, the uses to which the plaintiff's land was devoted at the time of the grant, the usage in constructing and repairing race-ways and canals similarly situated (*Prescott* v. *White*, 21 Pick. 341), and all the circumstances of the case. The grant being of an easement, the title to the soil remained in the grantor, and so much of it as was not necessary to the proper construction of the canal belonged to the plaintiff. *Leavitt* v. *Towle*, 8 N. H. 97;

*Graves* v. *Amoskeag Co.*, 44 N. H. 465.    The soil belonging to the plaintiff, the defendant, being compelled to remove it in widening the canal, might reasonably leave it for the plaintiff's use, doing no unnecessary damage.    The referee has found that the widening of the canal was necessary for the use of the defendant's mill and water-power, and has not found that in leaving the earth thrown upon the banks the defendant made an unreasonable use of the right to dig the canal.    Having the right to dig the canal and the right to enter upon the land for that purpose, it does not appear that he exceeded what was required for the reasonable enjoyment of the easement; and his acts in depositing and leaving the earth upon the banks of the canal are not wrongs for which the plaintiff can recover.

Another claim which the plaintiff makes for damages is for the loss of his soil occasioned by the defendant's removing the lateral support of the adjacent soil by digging the canal and leaving the banks unsupported.    The plaintiff has a right to lateral support in the soil of an adjacent owner; and for loss occasioned by removing such support he could recover damages.    *Thurston* v. *Hancock*, 12 Mass. 220 ; *Gilmore* v. *Driscoll*, 122 Mass. 208 ; *Farrand* v. *Marshall*, 19 Barb. 380, 385, 386 ; *Hay* v. *Cohoes Company*, 2 N. Y. 162 ; *Richardson* v. *Vermont Central Railroad*, 25 Vt. 471.    This is not the case of a tract of land of definite width granted or taken for a purpose wholly to be performed within the boundaries fixed in the grant, or by some act of location.    An express grant was made, by right of which the defendant might dig a canal in the land ; and if the work was done in a reasonable and proper manner, the plaintiff could have no action for damages that followed as necessary and natural consequences from a proper construction of the canal. All such results were contemplated by the grant.    The action of the rain and frost, in causing the earth to some extent to fall into the canal, was a natural consequence of digging it, which the defendant had the right to do ; and no fault of construction being found, damages for this claim cannot be recovered.

No question is made of the plaintiff's right to recover the damages awarded for trespasses to his land west of the mill, and for that sum there must be

*Judgment on the report for the plaintiff.*

STANLEY, J., did not sit : the others concurred.