Parker, C. J.
The facts agreed present a case of great misfortune and loss, and one which has induced us to look very minutely into the authorities, to see if any remedy exists in law against those who have been the immediate actors in what has occasioned the loss ; but after all the researches we have been able to make, we cannot satisfy ourselves that the facts reported will maintain this action. -
The plaintiff purchased his land in the year 1802, on the .summit of Beacon Hill, which has a rapid declivity on all sides. In 1804 he erected a brick dwelling-house and out-houses on this lot, and laid his foundation, on the western side, within two feet of his boundary line. The inhabitants of the town of Boston were at that time the owners, either by original title or by an uninterrupted possession for more than sixty of the land ,on the hill lying westwardly of the lot pur *197 chased by the plaintiff. On the 6th of August, 1811, the defendants purchased of the town the land situated westwardly of the said lot owned by the plaintiff; and, in the same year, commenced levelling the hill, by digging and carrying away the gravel; they not actually digging up to the line of division between them and the plaintiff; but keeping five or six feet therefrom. Nevertheless, by reason of the hill, the earth fell away, so as in some * places [* 224 j to leave the plaintiff’s foundation wall bare, and so to endanger the falling of his house, as to make it prudent and necessary, in the opinion of skilful persons, for the safety of the lives of himself and his family, to remove from the house; and, in order to save tho materials, to take down the house, and to rebuild it on a safer foundation. The defendants were notified of the probable consequences of thus digging by the plaintiff, and were warned that they would' he called upon for damages, in case of any loss.
The manner, in which the town of Boston acquired a title to the. land, or to the particular use to which it was appropriated, can have no influence upon the question ;• as the fee was in the town, without any restriction as to the manner in which the land should be used or occupied.
It is a common principle of the civil and of the common law, that the proprietor of land, unless restrained by covenant or custom, has the entire dominion, not only of the soil, but of the space above and below the surface, to any extent he may choose to occupy it.
The law, founded upon principles of reason and common utility, has admitted a qualification to this dominion, restricting the proprietor so to use his own, as not to injure the property or impair any actual existing rights of another. Sic utere tua ut alienum non Icedas. Thus, no man, having land adjoining his neighbour’s which has been long built upon, shall erect a building in such manner as to interrupt the light or the air of his neighbour’s house, or expose it to injury from the weather or to unwholesome smells.'
But this subjection of the use of a man’s own property to the convenience of his neighbour is founded upon a supposed preexisting right in his neighbour to have and enjoy the privilege which by such act is impaired. Therefore it is, that, by the ancient common law, no man could maintain an action against the owner of an adjoining tract of land, for interrupting the passage of the light or the air to a tenement unless the tenement thus affected was ancient, so that the plaintiff could prescribe for the privilege of which he had * been deprived ; upon the common notion of prescription, [*225 ] that there was formerly a grant of the privilege, which grant has been lost by lapse of time, although the enjoyment of it has continued.
Now, in such"case of a grant presumed, if shall for the purposes *198 of justice be further presumed that it was from the ancestor of the man interrupting the privilege, or from those whose estate he has ; so as to control him in the use of his own property, in any manner that shall interfere with or defeat an ancient grant thus supposed to have been made. This is the only way of accounting for the common law principle which gives one neighbour an action against another, for making the same use of his property which he has made of his own. And it is a reasonable principle ; for it would be exceedingly unjust that successive purchasers or inheritors of an estate for the space of sixty years, with certain valuable privileges attached to it, should be liable to be disturbed by the representatives or successors of those who originally granted, or consented to, or acquiesced in, the use of the privilege.
It is true, that, of late years, the courts in England have sustained actions for the obstruction- of such privileges of much shorter duration than sixty years. But the same principle is preserved of the presumption of a grant. And, indeed, the modern doctrine, with respect to easements and privileges, is but a necessary consequence of late decisions, that grants and title-deeds may be presumed to have been made, although the title or privilege claimed under them is of a much later date than the ancient time of prescription.
The plaintiff cannot pretend to found his action upon this principle ; for he first became proprietor of the land in 1802, and built his house in 1804, ten years before the commencement of his suit. So that, if the presumption of a grant were not defeated by showing the commencement of his title to be so recent, yet there is no case, where less than twenty years has entitled a building to the [*226] qualities of * an ancient building, so as to give the owner a right to the continued use of privileges, the full enjoyment of which necessarily trenches upon his neighbour’s right to use his own property in the way he shall deem most to his advantage. A man who purchases a house, or succeeds to one, which has the marks of antiquity about it, may well suppose that all its privileges of right appertain to the house ; and, indeed, they could not have remained so long, without the culpable negligence or friendly acquiescence of those who might originally have had a right to hinder or obstruct them. But a man who himself builds a house, adjoining his neighbour’s land, ought to foresee the probable use by his neighbour of the adjoining land ; and, by convention with his neighbour, or by a different arrangement of his house, secure himself against future interruption and inconvenience.
This seems to be the result of the cases anciently settled in England, upon the substance of nuisance or interruption of privileges and easements ; and it seems to be as much the dictate of common «ense and sound reason, as of legal authority.
*199 The decisions cited by the counsel for the plaintiff, (1) in support of this action, generally go to establish only the general principle, that a remedy lies for one who is injured consequentially by the acts of his neighbour done on his own property. The civil law doctrine cited from Domat will be found, upon examination, to go no further than the common law upon the subject. For, although it is there laid down, that new works on a man’s ground are prohibited, provided they are hurtful to others who have a right to hinder them ; and that the person erecting them shall restore things to their former state, and repair the damages ; from whence, probably, the common law remedy of abating a nuisance as well as recovery of damages ; yet this is subsequently explained and qualified in another part of the same chapter, where it is said, that, if a man does what he has a right to do upon his own land, without trespassing upon any law, custom, title, or possession, he is not liable to damage * [*227] for injurious consequences ; unless he does it, not for his own advantage, but maliciously ; and the damages shall be considered as casualties for which he is not answerable.
The common law has adopted the same principle, considering the actual enjoyment of an easement for a long course of years as establishing a right which cannot with impunity be impaired by him who is the owner of the land adjoining.
The only case cited from common law authorities, tending to show that a mere priority of building operates to deprive the tenant of an adjoining lot of the right of occupying and Using it at his pleasure, without being subjected to damages, if by such use he should injure a building previously erected, is that of Slingsby vs. Barnard, cited from Rolle. Sir John Slingsby brought his action on the case against Barnard and Ball, and declared that he was seized of a dwelling-house nuper edificatus, and that Barnard was seized of a house next adjoining ; and that Barnard, and Ball under him, in making a cellar under Barnard’s house, dug so near the foundation of the plaintiff’s house, that they undermined the same, and one half of it fell. Judgment upon this declaration was for the plaintiff, no objection having been made as to the right of action, but on.jy to the form of the declaration.
The report of this case is very short and unsatisfactory ; it not appearing whether the defendant confined himself in his digging to his own land, or whether the house then lately built was upon a new or an old foundation. Indeed, it seems impossible to maintain that case upon the facts made to appear in the report, without denying principles *200 which seem to have been deliberately laid down in other books, equally respectable as authorities.†
*201 Thus, in Siderfin, 167, upon a special verdict the case was thus. A., having a certain quantity of land, erected a new house upon part of it, and leased the house to B. and the residue of the land to C., who put logs and other things upon the land adjoining said house, so that the windows were * darkened, &c. It was [*228] holden that B. could maintain case against C. for this injury. But the reason seems to be, that C. took his lease seeing that the house was there, and that he should not, any more than the lessor, render the house first leased less valuable by his obstructions.† It was, however, decided in the same case, that, if one seized of land lease forty feet of it to A. to build upon, and another forty feet to B. to build upon, and one builds a house, and then the other digs a cellar upon his ground, by which the wall of the first house adjoin • ing falls, no action lies ; and so, they said, it was adjudged in Pigott fy Surry's case, for each one may make what advantage he can of his own.‡ The principle of this decision is, that both parties came to *202 the land with equal rights in point of time and title ; and that he who first built his house should have taken care to stipulate with his neighbour, or to foresee the accident and provide against it by setting his house sufficiently within his line to avoid the mischief. In the same case it is stated, as resolved by the court, that, if a stranger have the land adjoining to a new house, he may build new houses, &c., upon his land, and the other shall be without remedy, when the. lights are darkened ; otherwise, when the house first built was an ancient one.
In Rolle’s Abridgment, 565, A., seized in fee of copyhold estate, next adjoining land of B., erects a new house upon his copyhold land, and a part is built upon the confines next adjoining the land of B., and B. afterwards digs his land so near the house of A., but on no part of his land, that the foundation of the house, and even the house itself, fall; yet no action lies for A. against B., because it was the folly of A. that he built his house so near to the land of B. For by his own act he shall not hinder B. from the best use of his own land that he can. And after verdict, judgment was arrested. The reporter adds, however, that it seems that a man, who has land next adjoining my land, cannot dig his land so near mine, as to cause mine to slide into the pit; and, if an action be brought for this, it will lie.
[ * 229] * Although, at first view, the opinion of Rolle seems to be at variance with the decision which he has stated, yet they are easily reconciled with sound principles. A man in digging upon his own land is to have regard to the position of his neighbour’s land, and the probable consequences to his neighbour, if be digs too near his line ; and if he disturbs the natural state of the soil, he shall answer in damages ; but he is answerable only for the natural and necessary consequences of his act, and not for the value of a house put upon or near the line by his neighbour. For, in so placing the house, the neighbour was in fault, and ought to have taken better care of his interest.†
*203 If this be the law, the case before us is settled by it ; and we have not been able to discover that the doctrine has ever been overruled, nor to discern any good reason why it should be.
The plaintiff purchased his land in 1802. At that time the inhabitants of Boston were in possession and the owners of the adjoining land now owned by the defendants. The plaintiff built his house within two feet of the western line of the lot, knowing that the town, or those who should hold under it, had a right to build equally near to the line, or to dig down into the soil for any other lawful purpose. He knew also the shape and nature of the ground, and that it was impossible to dig there without causing excavations. He built at his peril; for it was not possible for him, merely by building upon his own ground, to deprive the other party of such use of his as he should deem most advantageous. There was no right acquired by his ten years’ occupation, to keep his neighbour at a convenient distance from him. He could not have maintained an action for obstructing the light or air ; because he should have known, that, in the course of improvements on the adjoining land, the light and air might be obstructed. It is, in fact, damnum, absque injuria,.
By the authority above cited, however, it would appear that for the loss of, or injury to, the soil merely, his action * [ * 230 ] may be maintained. The defendants should have anticipated the consequences of digging so near the line ; and they are answerable for the direct consequential damage to the plaintiff, although not for the adventitious damage arising from his putting his house in a dangerous position.

 1 Domat, 309, 408. — Fitz N. B. 183 — 9 Co. 59. — Palmer, 536. — 1 Roll. Abr. 140.—Ibid. 430. — Slingsby vs. Barnard, 1 Roll. Rep. 88.— 2 Roll Abr. 565. — 2 Saund. 697.— Co. Lit. 56, b. — 1 Burr. 337. — 6 D. & E. 411. — 7 East, 368. — 1 B. & P. 405 3 Wils 461.

 Slingsby vs. Barnard, (1 Rolle, Rep. 430) is mentioned with approbation, and "relied upon as authority, by Baron Vaughn in the recent case of Brown vs. Windsor (1 Crompt. Jer. 28), and there are many precedents which seem to be founded upon the same principle. Smith al. vs. Martin, 2 Saund. 399. — Roberts vs. Read, 16 East, 21 — Gillon vs. Bodington, 1 Car. & P. 541. — R. M. 101. — Staffordshire Canal Co. vs. Hallen, 6 B. & C. 317 — Earl of Londsdale vs. Littledale, 2 H Bl. 207.— Brown vs. Windsor, ub. sup. — Jones vs. Bird & al., 5 B. A. 837. — Sutton vs. Clark, 6 Taunt. 291. — Lukin & al. vs. Godsall, Peake's New Cases, 15. — Barnwell vs. Kersey al., 1 Mod. Ent. 195. — 3 Lev. 171-179. — Buchanan vs. Noyes, 8 Went. 544.— Morg. Prec. 283. — Plead, als. 77. — Leader vs. Moxon al., 3 Wits. 461. — 2 Blk 24. — Com. Dig., Act. Case. Nuis., A. —2 Rolle, Ab. 565. C 10 —Ashton, 47 The principle is borrowed from the Roman law (L. 24, § 12, de damna infecta. — Hein, ad Pand. h. t. § 101. — Dorn. B. 2, 78, § 3, Art. 10; B. 3, Tit 5, § 2, Art. 17; B. 1, Tit. 12, § 2, Art. 8. — Pardessus des Servitudes, Par. 2, Chap. 2, Art. 3, Sec. 2, § 1, 177, §6, 199, — Poth. ad Pand. h. t), and is founded in great reason. There is a manifest difference, m a legal view, between the erecting a building on one's own lands, so as to obstruct the lights of a new building on the adjacent lands of a neighbour; and the digging down in one’s own lands near the adjoining lands of such neighbour so as to loosen the earth under the foundation of his newly-erected house or other building and thereby cause it to fall. In the one case, my neighbour is only deprived of an advantage which he was enjoying by reason of my not having exercised my right; in the other case he sustains a positive injury in the lawful use and enjoyment of his own property In the former case the neighbouring premises remain undisturbed ; in the lattei case they do not. This distinction is recognized in the Roman law. (L. 24, § 12, dt damna inf ecto; L. 26, h. t. — Hein, ad Pand. h. t. § 101, 103. — Poth. Pand. h.t. L 9, de serv. urb. prced.— Ulp.lib 53, ad Ed., c. 8.— Cox, lib. 3, Tit 34, deserv. 1. 9.— Cox, d. tit. sed si.) A case sorriewhat like the former is the obstructing of a watercourse, whereby the mill, house, or lands of the proprietor below are prejudiced for want of the usual flowing of the water into, by, or through his premises For this, however, an action will lie (Wright vs. Howard, 1 Sim. & Stu. 190. — Bealy vs. Shaw, 6 East, 208. —Prickman vs. Tripp, Skinn. 389. — Carth. 231. — Conham vs. Fisk, 2 C. & J. 126. — Williams vs. Morland, 2 B. & Cr. 910 — Cox vs Matthews, 1 Vent. 237. — Surry vs. Pigott, W. Jones. 145. — Palm 144. —Poph. 166. — Bulst. 339. — Noy, 84. — Latch, 153), unless it be in a case like this, namely, where one in digging a well in his land, for his use, interrupts by accident the hidden springs to his neighbour’s well. (Dig. Lib. 39, Tit. 2, l. 24, § 12.) So is the preventing the wind from blowing upon a neighbouring windmill (Winch. R. 3. — Cod Lib. T. 34, l. 14, § 1.) Cases bearing some analogy to the latter are, the erection of a swine-sty, a lime-kiln, a dye-house (Aldred's case, 9 Co. 599), a privy (Jones vs. Powell, Hiitt. 336), a smith's forge (Bradhj vs. Gill, Lutw. 69), a tobacco mill (Styan vs. Hutchinson, Selw. N. P., 8th ed, 1124) a tallow furnace (Morley vs. Pragnell, Cro. Car. 510), a tan-vat (Hutt. nb. sup.), a smelting house (Poynton vs. Gill, 1 Rolle, 89, l. 15), a brewhouse (Palmer, 539), a washhouse, stable, or any other like offensive thing so near the house and premises of a neighbour, as to deprive him of, or injure him in, the use and enjoyment thereof. (1 Par. & Fonb. Med. Jur. 330-354.) In all these cases an action will lie, although the person inflicting the injury confines himself in his operations to his own premises ; since the injurious consequences thereof are felt beyond the limits of his lands. For the maxim of the Roman law, sic utere tua ut alienum non Jadas," applies. There is, however, a qualification of this maxim under which the case in the text has been erroneously thought to fall. Non debeat videri is damnum facere qui eo veluti lucro quo adhuc utebatur prohibctur. ’ Dig. lib. 39, Tit. 2, l. 26. — Ulp. lib. 81. ad Ed.) Sed vide Panton vs. Holland, 17 Johns. 92. — Callender vs Marsh, 1 Pick 418. — Peyton vs. St. Thomas' Hospital, 9 B. & L. 725. — Walter et al. vs. Phiel, 1 M. & M. 362. — Masser vs. Goyder, 4 C. & P. 161. — Palmer vs. Flechier, 1 Sid. 167. - - 1 Keb. 625.— Wilde vs. Minsterly,2 Rolle, Ab. 565, l. 9.— Com. Dig., Act. Case, Nuis. (C). The opinion of Rolle is not very easily reconcilable with the unreported case he refers to. For, if any distinction were to be made between the disturbing the earth *201 and the causing the buildings to fall, it could, as it would seem, only be taken in a question of damages before the jury, and not in arrest of judgment after verdict. And why might not the plaintiff as lawfully build on the confines of his own lands in a populous and crowded city, as the defendant could dig on the confines of his land? If the plaintiff, then, had lawfully erected a building on his own lands, on a safe and proper foundation, so as not to require any extraordinary support from the adjoining soil, and to allow the defendant without prejudice to use his lands for ordinary purposes, was it lawful for the defendant, by digging a pit in an unusual manner, and to an extraordinary depth, and for no ordinary purpose, in his own soil, to undermine or loosen the foundation of the building erected by the plaintiff? It is said, the defendants had a right to make what advantage they could of their own property. Had not the plaintiff the same right ? Having exercised his right in a reasonable way, had the defendants any right to use their property in an unusual manner, so as to injure him ? If there was nothing unusual or extraordinary in digging down and carrying off the soil forty-four feet deep, to such an extent as the case finds, in a city like Boston, or in the purpose for which it was done, or if the building of the plaintiff was erected in an improper, unusual, or unsafe place or manner, these were questions for the jury, and not for the Court to determine.

 Coutts vs. Gorham, 1 M. & M. 396. — Compton vs. Richards, 1 Price, 27. — Riviere vs. Brown, R. & M 24.

 The case referred to in Siderfin is Palmer vs. Flechier. It is variously reported in different books. 1 Sid. 168-227. — Ray. 87. — 1 Keb. 553 - 625, 794, 836. — 1 Lev. 122. It appears to have been an action of the case, by the lessee of a building in the Strand, in the city of London, against the grantee of the adjoining premises, claiming under the lessor, for obstructing the lights of the house. The question, whether the action would lie, was presented on a special verdict. The Court, it seems, were divided in opinion; and the case was mooted several times The best account is given in Keble, who says, that, at the first hearing, Foster, Ch. J., and Tioisden held that the action would lie, and Keeling intimated an opinion to the contrary, and the case was postponed. At the next term, Foster having died, and Hyde, Ch. J., being absent, Windham and Twisden held that the action would lie, and Keeling held that it would not lie. About a year afterwards, in another action between the same parties for a continuance of the same nuisance, upon demurrer to the declaration, all the Court but Keeling held that the action would lie, but Keeling maintained his former opinion. Lcvinz gives pretty nearly the same account of the case. All the other reporters speak only of the first action on the second hearing. According to the report in Raymond, Keeling held that the action would lie, and Twisden and Windham held that it would not. It is very clear, however from all the reports of the case, tho* *202 nothing was decided therein which conflicts with Slingsby vs. Barnard. As to the obiter dictum, referred to in the text, as being the decision of the whole Court, Siderfin says it was the dictum of Twisden and Windham, who said it was so adjudged in Pigott and Surry’s case-; Keble attributes it to Keeling, who said it had been so adjudged, and who differed from the rest of the Court in regard to the principal point; and the others allude to no such decision as being referred to, but are silent upon the subject. That it was not so adjudged in Surry vs. Pigott is very clear from all the reports of that case (W. Jones, 145. — Palm. 444. — Latch, 153. — Noy, 84. — 3 Bulst. 389. — Poph. 166). The case presented no such point; nor is any such obiter dictum to be found in any of the reports of it. It appears from Keble that Pigott and Surry's case was cited by Keeling for quite another purpose, and the point decided there is truly stated. .It is strange, therefore, under these circumstances, that the case referred to in Siderfin should have been relied upon as an authority for the decision ip the text.

 Was it not quite as lawful for him to build up there, as for his neighbour to dig down ? In fact, neither could lawfully prevent the other from a reasonable use of his *203 own premises, nor could either make an unreasonable use of his own, to the injury of his neighbour.