ANNE GILMORE *vs.* JAMES DRISCOLL.

Suffolk. Mar. 7, 1876. — Mar. 7, 1877. AMES & MORTON, JJ., absent.

One who digs a pit on land so that, by the operation of natural and ordinary causes, which he takes no precaution to guard against, the land of another falls into the pit, is liable to an action by the latter for the injury to his land in its natural condition, but not for injuries to buildings or improvements thereon, such as fences and shrubbery, without proof of actual negligence; the measure of damages is the actual loss of and injury to the soil; and it is immaterial that the defendant is not the owner of the land dug upon, but removes the soil therefrom for his own benefit by permission of the owner thereof.

TORT for injuries to the plaintiff's land by the excavation of adjoining land by the defendant.

The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court on appeal, on an agreed statement of facts as follows:

"The plaintiff was owner of a parcel of land in a populous portion of that part of Boston, lately Roxbury, as described in her writ, bounded on the southwesterly side by the land of one Webb. On this land of the plaintiff, but immediately adjoining the division line, was a fence, and near to it a few currant bushes and certain modern structures. The two parcels in their natural condition made a knoll, the highest part of which was at or near the division line.

"Webb, the owner of the adjoining lot, under an agreement with one Gillighan, gave him permission to remove the soil of his land down to a grade of the street on its northwesterly side, on which both lots were located. Webb gave Gillighan the right to go up to, but not within two feet of the plaintiff's fence. Webb had no other connection with the acts complained of.

"Gillighan for a consideration gave permission to the defendant to remove a portion of this said soil, and under that license the defendant removed all the soil that was removed nearest to and along the line of the plaintiff's land, and the removal of which, it was alleged, caused the damage complained of. Gillighan gave the license to the defendant under the same restrictions as to 'not within two feet of the plaintiff's fence,' as Webb had imposed upon him.

" The depth to which the grade of this adjoining land was low-ered by the defendant against the plaintiff's lot was at its greatest measure some ten feet, and at its lowest, some five feet. The soil of the plaintiff's lot fell along the whole length of her line to the width of some two or three feet at the top, taking with it the fence and shrubbery upon it. The weight of the plaintiff's structures near the line did not contribute to the falling away of the soil. The defendant left a bank of earth on the Webb lot against the plaintiff's land along the whole line, but it was not in all parts two feet wide at the top. There was no falling away of the soil at the time the defendant ceased his work, which was in the fall of the year, about the 23d of October. The bank left by the defendant was rendered insufficient to hold the soil of the plaintiff in its natural condition by the effect of rains and frost. The bank began to give way under the effect of rains and frost at once, but the soil of the plaintiff was not actually disturbed till the month of March in the spring following the fall when the work of the defendant was ended.

" The damages occasioned to the plaintiff by loss of and injury to her soil alone, caused by the acts of the defendant, amount to ninety-five dollars. To put the plaintiff's land into its former con-dition, and so maintain it by means of a retaining wall, (which I find to be the best method of accomplishing that result,) would cost the sum of five hundred and seventy-five dollars; and to replace the fence and shrubs would cost the further sum of forty-five dollars. The difference between the market value of the plaintiff's lot of land as affected by the act of the defendant, and what its market value would be had it not been deprived of its natural supports, (without taking into account the unavoidable disadvantage to the plaintiff, which must have followed from the lawful cutting down of the adjoining lot, though her soil had not been disturbed thereby,) would be the equivalent of and fully compensated by the cost of putting her land back into the same condition it was before, or the sum of the two amounts last named, namely, six hundred and twenty dollars."

Upon the foregoing facts, the court was to enter such judg-ment as it should deem proper.

*P. E. Tucker*, for the plaintiff.

*C. H. Drew*, for the defendant.

GRAY, C. J. The right of an owner of land to the support of the land adjoining is *jure naturæ*, like the right in a flowing stream. Every owner of land is entitled, as against his neighbor, to have the earth stand and the water flow in its natural condition. In the case of running water, the owner of each estate by which it flows has only the right to the use of the water for reasonable purposes, qualified by a like right in every other owner of land above or below him on the same stream. But in the case of land, which is fixed in its place, each owner has the absolute right to have his land remain in its natural condition, unaffected by any act of his neighbor; and, if the neighbor digs upon or improves his own land so as to injure this right, may maintain an action against him, without proof of negligence.

But this right of property is only in the land in its natural condition, and the damages in such an action are limited to the injury to the land itself, and do not include any injury to buildings or improvements thereon. While each owner may build upon and improve his own estate at his pleasure, provided he does not infringe upon the natural right of his neighbor, no one can by his own act enlarge the liability of his neighbor for an interference with this natural right. If a man is not content to enjoy his land in its natural condition, but wishes to build upon or improve it, he must either make an agreement with his neighbor, or dig his foundations so deep, or take such other precautions, as to insure the stability of his buildings or improvements, whatever excavations the neighbor may afterwards make upon his own land in the exercise of his right.

In 2 Rol. Ab. 564, it is stated that in *Wilde* v. *Minsterley*, in 15 Car. I., it was decided in the King's Bench, after a verdict for the plaintiff, that "if A. be seised in fee of copyhold land next adjoining to the land of B., and A. erects a new house upon his copyhold land, and some part of the house is erected upon the confines of his land next adjoining to the land of B., and B. afterwards digs his land so near to the foundation of A.'s house, but no part of A.'s land, that thereby the foundation of the house and the house itself fall into the pit, yet no action lies by A. against B., because it was A.'s own fault that he built his house so near the land of B., for he by his act cannot hinder B. from making the best use of his own land that he can. But it seems

that a man who has land next adjoining to my land cannot dig his land so near my land that thereby my land shall go into his pit; and therefore, if the action had been brought for this, it would lie."

In the same court, in 15 Car. II., Justices Twisden and Windham said that it had been adjudged that, " if I, being seised of land, lease forty foot thereof to A. to build a house thereon, and other forty foot to B. to build a house, and one of them builds a house, and then the other digs a cellar in his land, whereby the wall of the first house adjoining falls, no action lies for that, because each one may make the best advantage of his digging;" " but it seemed to them that the law is otherwise, if it was an ancient wall or house that falls by such digging." *Palmer* v. *Fleshees*, 1 Sid. 167. In another report, the corresponding statement is, that " it was adjudged that two having ground adjoining, the one built *de novo*, and the other in his ground digged so near, that the other fell, and no remedy, the house being new." *Palmer* v. *Flessier*, 1 Keb. 625. That adjudication is referred to in Siderfin as " 7 Jac. in Pigott and Surie's case," and in Keble as " 7 Car." But *Sury* v. *Pigot*, decided in 1 Car. I., and fully reported in Popham, 166, was upon another point, and is so stated in Keble, *ubi supra;* and it would seem that the reference intended may have been to the case of *Wilde* v. *Minsterley*, above cited.

There are indeed two or three early cases, in which actions appear to have been sustained for undermining houses by digging on adjoining land. *Slingsby* v. *Barnard*, 14 Jac. I., 1 Rol. R. 430. *Smith* v. *Martin*, 23 Car. II., 2 Saund. 400. *Barwell* v. *Kensey*, 35 Car. II., 3 Lev. 171; *S. C.* 1 Mod. Entr. 195. But in *Slingsby* v. *Barnard*, and in *Smith* v. *Martin*, the objections made were not to the right to maintain the action, but only to particulars in the form of the declaration; and in *Barwell* v. *Kensey*, the declaration, as construed by the majority of the court, alleged not merely digging near the plaintiff's foundation, but digging that foundation itself.

In *Tenant* v. *Goldwin*, 2 Ld. Raym. 1089, 1094, Lord Holt and Justice Powell are reported to have " held that a man cannot build so near another man's house as to throw it down." But the only point adjudged was the same as in *Ball* v. *Nye*, 99

Mass. 582, that a man is bound, of common right, to keep a vault upon his own land in repair, so that the filth shall not flow upon his neighbor's land, "for he whose dirt it is must keep it that it may not trespass." *S. C.* 1 Salk. 360, 361; 6 Mod. 311; 1 Salk. 21; Holt, 500. And upon a comparison of the various reports it is evident that the digging so near another's wall as to weaken it was not spoken of as giving a right of action to the owner of the wall, but as limiting his liability for the escape of filth caused by the new digging.

The latest and the most authoritative statement of the law of England upon this point before the American Revolution is that of Chief Baron Comyns, who, citing Rolle's Abridgment and Siderfin's Reports, *ubi supra*, says that an action upon the case lies for a nuisance, " if a man dig a pit in his land, so near that my land falls into the pit; " but does not lie, " if a man build an house, and make cellars upon his soil, whereby an house newly built in an adjoining soil falls down." Com. Dig. Action upon the Case for a Nusance, A., C.

In *Thurston* v. *Hancock*, 12 Mass. 220, which was decided in 1815, and is the leading American case on this subject, the plaintiff in 1802 bought a parcel of land upon Beacon Hill in Boston, bounded on the west by land of the town of Boston; and in 1804 built a brick dwelling-house thereon, with its rear two feet from this boundary, and its foundation fifteen feet below the ancient surface of the land. The defendants in 1811 took a deed of the adjoining land from the town, and began to dig and remove the earth therefrom, and, though notified by the plaintiff that his house was endangered, continued to do so to the depth of forty-five feet, and within six feet of the rear of the plaintiff's house, and thereby caused part of the earth on the surface of the plaintiff's land to fall away and slide upon the defendant's land, and rendered the foundations of the plaintiff's house insecure, and the occupation thereof dangerous, so that he was obliged to abandon it.

The court, after advisement, and upon a review of the earlier English authorities, held that the plaintiff could recover for the loss of or injury to the soil merely, and not for the damage to the house; and Chief Justice Parker, in delivering judgment, said : " It is a common principle of the civil and of the common

law, that the proprietor of land, unless restrained by covenant or custom, has the entire dominion, not only of the soil, but of the space above and below the surface, to any extent he may choose to occupy it. The law, founded upon principles of reason and common utility, has admitted a qualification to this dominion, restricting the proprietor so to use his own, as not to injure the property or impair any actual existing rights of another. *Sic utere tuo ut alienum non lædas.*" "But this subjection of the use of a man's own property to the convenience of his neighbor is founded upon a supposed preëxisting right in his neighbor to have and enjoy the privilege which by such act is impaired." 12 Mass. 224. "A man, in digging upon his own land, is to have regard to the position of his neighbor's land, and the probable consequences to his neighbor, if he digs too near his line ; and if he disturbs the natural state of the soil, he shall answer in damages ; but he is answerable only for the natural and necessary consequences of his act, and not for the value of a house put upon or near the line by his neighbor." "The plaintiff built his house within two feet of the western line of the lot, knowing that the town, or those who should hold under it, had a right to build equally near to the line, or to dig down into the soil for any other lawful purpose. He knew also the shape and nature of the ground, and that it was impossible to dig there without causing excavations. He built at his peril ; for it was not possible for him, merely by building upon his own ground, to deprive the other party of such use of his as he should deem most advantageous. There was no right acquired by his ten years' occupation, to keep his neighbor at a convenient distance from him." "It is, in fact, *damnum absque injuria.*" 12 Mass. 229.

Upon the facts of that case, it was questionable whether the acts of the defendant would not have caused the falling away of the plaintiff's land if no house had been built thereon ; and yet the court held the plaintiff not to be entitled to recover any damages for the fall of his house, without regard to the question whether the weight of the house did or did not contribute to the fall of his soil into the pit digged by the defendant. No claim for like damages was made in this Commonwealth until more than forty years afterwards, when the decision in *Thurston* v. *Hancock* was followed and confirmed. *Foley* v. *Wyeth*, 2 Allen, 131.

In *Foley* v. *Wyeth*, the court, after stating that the right of support from adjoining soil for land in its natural state stands on natural justice, and is essential to the protection and enjoyment of property in the soil, and is a right of property which passes with the soil without any grant for the purpose, said : " It is a necessary consequence from this principle, that for any injury to his soil, resulting from the removal of the natural support to which it is entitled, by means of excavation of an adjoining tract, the owner has a legal remedy in an action at law against the party by whom the work has been done and the mischief thereby occasioned. This does not depend upon negligence or unskilfulness, but upon the violation of a right of property which has been invaded and disturbed. This unqualified rule is limited to injuries caused to the land itself, and does not afford relief for damages by the same means to artificial structures. For an injury to buildings, which is unavoidably incident to the depression or slide of the soil on which they stand, caused by the excavation of a pit on adjoining land, an action can only be maintained when a want of due care or skill, or positive negligence, has contributed to produce it." 2 Allen, 133. And it was accordingly adjudged that, if the defendant in that case, by excavating and carrying away earth on her own land, caused the plaintiff's land to fall and sink into the pit which she had dug, she was liable for the injury to the soil of the plaintiff ; but that, in the absence of any proof of negligence in the execution of the work, the jury could not take into consideration, as an element of damage for which compensation could be recovered, the fact that the foundation of the plaintiff's house had been made to crack and settle, although the weight of his house did not contribute to the sliding or crumbling away of the soil.

The decisions in *Thurston* v. *Hancock* and *Foley* v. *Wyeth* are not affected by those in *Hartshorn* v. *Worcester*, 113 Mass. 111, and *Marsden* v. *Cambridge*, 114 Mass. 490, which related to claims for injuries done in the making of a highway, and were ased upon the terms of the statutes upon that subject, and not upon the rule of the common law governing proprietors of adjoining lands.

By the modern authorities in Great Britain, it is clear that a right to the support of a building by adjacent land can arise only by grant or prescription. *Wyatt* v. *Harrison*, 3 B. & Ad. 871. *Partridge* v. *Scott*, 3 M. & W. 220. *Caledonian Railway* v. *Sprot*, 2 Macq. 449. *Bonomi* v. *Backhouse*, E., B. & E. 622, and 9 H. L. Cas. 503.

In *Bonomi* v. *Backhouse*, in which an action was maintained by an owner of land and of an ancient house, for damage occurring within six years, from the working of coal mines, two hundred and eighty yards from the house, more than six years before the commencement of the action, Mr. Justice Willes, delivering the judgment in the Exchequer Chamber, which was affirmed by the House of Lords, said : " The right to support of land and the right to support of buildings stand upon different footings as to the mode of acquiring them; the former being *primâ facie* a right of property analogous to the flow of a natural river, or of air, though there may be cases in which it would be sustained as matter of grant; whilst the latter must be founded upon prescription or grant, express or implied ; but the character of the rights, when acquired, is in each case the same." E., B. & E. 654, 655. And Lord Wensleydale said : " I think it perfectly clear that the right in this case was not in the nature of an easement, but that the right was to the enjoyment of his own property, and that the obligation was cast upon the owner of the neighboring property not to interrupt that enjoyment." 9 H. L. Cas. 513.

The cases of *Brown* v. *Robins*, 4 H. & N. 186, *Hunt* v. *Peake*, H. R. V. Johns. 705, and *Stroyan* v. *Knowles*, 6 H. & N. 454, in which it was held that, in an action for causing soil to sink, which would have sunk if there had been no building upon it, the damages recovered might include the injury to the buildings also, are directly opposed to our own cases of *Thurston* v. *Hancock* and *Foley* v. *Wyeth*, in the latter of which *Brown* v. *Robins* was before the court.

Upon a question of this kind, affecting all the lands in the Commonwealth, it would be unjustifiable and mischievous for the court to change a rule of law which has been established and acted upon here for sixty years. Even in England, it is held that for digging upon neighboring land, and thereby causing the

plaintiff's land to sink and his building to fall, although the jury find that the land would have sunk if there had been no building upon it, yet no action will lie, if no appreciable damage is proved to the land without the building. *Smith* v. *Thackerah,* L. R. 1 C. P. 564.

The weight of American authority is in accordance with the decisions of this court. It has generally been considered that for an excavation causing an injury to the soil in its natural state an action would lie ; but that, without proof of a right by grant or prescription in the plaintiff, or of actual negligence on the part of the defendant, no action would lie for an injury to buildings by excavating adjoining land not previously built upon. *Panton* v. *Holland,* 17 Johns. 92. *Lasala* v. *Holbrook,* 4 Paige, 169. *Hay* v. *Cohoes Co.* 2 Comst. 159, 162. *McGuire* v. *Grant,* 1 Dutcher, 356. *Richart* v. *Scott,* 7 Watts, 460. *Richardson* v. *Vermont Central Railroad,* 25 Vt. 465. *Beard* v. *Murphy,* 37 Vt. 99, 102. *Shrieve* v. *Stokes,* 8 B. Mon. 453. *Charless* v. *Rankin,* 22 Misso. 566.

It is difficult to see how the owner of a house can acquire by prescription a right to have it supported by the adjoining land, inasmuch as he does nothing upon, and has no use of, that land, which can be seen or known or interrupted or sued for by the owner thereof, and therefore no assent of the latter can be presumed to the acquirement of any right in his land by the former. The English cases are founded on an analogy to the doctrine of ancient lights, which is not in force in this country. *Hide* v. *Thornborough,* 2 Car. & K. 250, 255, and *Stansell* v. *Jollard,* there cited. *Solomon* v. *Vintners' Co.* 4 H. & N. 585, 599, 602. *Chasemore* v. *Richards,* 7 H. L. Cas. 349, 385, 386. *Greenleaf* v. *Francis,* 18 Pick. 117, 122. *Keats* v. *Hugo,* 115 Mass. 204, 215. *Richart* v. *Scott,* 7 Watts, 460, 462. *Napier* v. *Bulwinkle,* 5 Rich. 311, 324. But this case does not require us to determine that question, because there is no evidence that the structures and improvements upon the plaintiff's land have been there for twenty years.

Nor is it necessary to consider whether negligence on the part of the defendant could enlarge the measure of his liability ; because the case stated does not find that he was negligent, nor set out any facts from which actual negligence can be inferred.

The cause of action is that the plaintiff has an absolute right to have her soil stand in its natural condition, and that any one who injures that right is a wrongdoer, independently of any question of negligence. *Foley* v. *Wyeth*, 2 Allen, 131, 133. *Hay* v. *Cohoes Co.* 2 Comst. 159, 162. *Richardson* v. *Vermont Central Railroad*, 25 Vt. 465, 471. *Humphries* v. *Brogden*, 12 Q. B. 739.

The fact that the defendant was not the owner of the adjoining land affords him no exemption. It was never considered necessary, in an action of this kind, to allege that the defendant owned or occupied the land on which the digging was done that injured the plaintiff's soil. *Smith* v. *Martin*, 2 Saund. 400 & note. *Nicklin* v. *Williams*, 10 Exch. 259. Even an agent of the owner of the adjoining land would be liable for his own negligence and positive wrongs ; for his principal could not confer upon him any authority to commit a tort upon the property or the rights of another. *Bell* v. *Josselyn*, 3 Gray, 309. Story on Agency, § 311. And, upon the case stated, the defendant appears not to have been an agent of the owner of the land, but to have removed the soil therefrom for his own benefit, by permission of Gillighan, who had a like agreement with and license from the owner ; and it is at least doubtful whether the owner of the land could be held responsible for the defendant's acts. *Gayford* v. *Nicholls*, 9 Exch. 702. *Hilliard* v. *Richardson*, 3 Gray, 349.

The case finds that the defendant ceased his work towards the end of October, and left the bank in such a shape that by the effect of rains and frost it was rendered insufficient to hold the soil of the plaintiff in its natural condition, and began to give way at once, although the plaintiff's soil was not actually disturbed till the month of March following. The necessary inference is that by the operation of natural and ordinary causes upon the land as it was left by the excavations of the defendant, and which he took no precaution to guard against, part of the soil of the plaintiff's land slid and fell off ; and for the injury so caused to her soil this action may be maintained. But she cannot maintain an action for the injury to her fences and shrubbery, because her natural right and her corresponding remedy are confined to the land itself, and do not include buildings or other improvements thereon.

The remaining question is of the measure of damages. The peculiar form of the case stated, in this respect, as might be inferred from its terms, and as was admitted at the argument, has been occasioned by incorporating into it the substance of the award of an arbitrator. It is agreed that the "damages occasioned to the plaintiff, by loss of and injury to her soil alone, caused by the acts of the defendant, amount to ninety-five dollars." We are of opinion that she is entitled to recover that sum, and no more. She is clearly not entitled to recover the cost of putting her land into and maintaining it in its former condition, because that is no test of the amount of the injury. *McGuire* v. *Grant,* 1 Dutcher, 356. She cannot recover the difference in market value, because it does not appear that that difference is wholly due to the injury to her natural right in the land ; it may depend upon the present shape of the lot, upon the improvements thereon, or upon other artificial circumstances which have nothing to do with the natural condition of the soil.

*Judgment for the plaintiff for $95.*