### ROBERT CUMMINGS, GUARDIAN, v. THE CITY OF TOLEDO.

1. LIABILITY OF MUNICIPAL CORPORATION FOR NEGLIGENT CONSTRUCTION OF ITS SEWERS.

    A municipal corporation is liable to an owner of property for damages suffered by him, which have resulted from the negligent construction of its sewers.

2. METHOD OF ASCERTAINING THE MEASURE OF DAMAGES.

    Where damages have been caused to real property by the negligent construction of the sewers of a municipal corporation, the measure of damages to be determined by the jury, would be the difference in the value of the property before and immediately after the injury occurred.

ERROR.

KING, J.

This is a case brought in the court of common pleas by Robert Cummings, guardian, to recover from the city of Toledo damages done to a building situate on the westerly side of Ontario street, between Madison and Jefferson streets. He avers that the city had provided sewerage for the district in which that building is situated, and had provided a sewer located in Jefferson street, with which the plaintiff's property was connected by himself by a sewer running along Ontario street, and con-

nected with the main sewer on Jefferson.. He alleges that the plaintiff, in constructing its sewer, had carelessly constructed it, and this carelessness of the city consisted in building it so that it did not have sufficient capacity to carry off the water from plaintiff's premises and from the territory that it was expected to drain, and that at a point on Jefferson street it had been constructed around an obstruction, so that there was a curve in the main sewer in that street, and instead of running it directly down Jefferson street to its outlet, there was an angle turning up Huron street, and then another angle at Monroe street; and also that they had provided certain gates which were intended to prevent the water from the river coming back, and those were left in such a manner that they cut off the outflow, and in that way, by means of these angles, curves and gates, the capacity of the sewer had been diminished, although its original capacity was never sufficient. That at some time previous to the commencement of this suit water had backed up and flowed in and upon the plaintiff's premises, into his cellar, and damaged his building and walls, and injured them in several material respects.

The city denied all allegations of negligence, and also claimed that the plaintiff had been negligent in constructing his connections; also that at the time when the plaintiff was injured, it was by a storm that was unprecedented, and not anticipated.

The plaintiff offered his evidence on the trial of the case, and proved that he was the owner of the premises; that the water had backed in two or three times, and that it had done some damage; that it had weakened some pillars through the center of the building. There was some claim made that the floor had been injured; that a brick floor was originally built, and either because of the water or for some other reason the plaintiff had seen fit to take that brick floor up and put in a cement floor, which he claimed was necessary. Of course, while this water was there, it was a very great nuisance, and it had entailed some expense on the tenant, who was occupying the property under a lease for ten years. Clearly for any damage or injury to the tenant's property the owner could not recover. The only damage he could recover for, if he made out a case, was the injury to the freehold—the building, and land, as it stood there. He offered evidence upon the trial tending to show what that damage consisted of, and how much it amounted to. Some of this evidence was in the first instance ruled out by the court, and then there was other evidence which I think was read to the jury and ruled out after it had been read. When the evidence was all closed the court, on motion of the defendant, took the case from the jury.

There are two complaints made. One is, that the city would be liable for the injury done to this building, regardless of any question of negligence upon its part; that if it constructed a sewer, and it contributed to the injury to this building, the city would be liable. And in the second place, that the court erred in its ruling as to the kind of evidence that should be given to prove damages.

Upon the first question I only need say a word. Several authorities were cited in support of the proposition that the city would be liable. These were the cases of *Rhodes* v. *Cleveland*, 10 O., 159, and *McCombs* v. *Akron*, 15 O., 474, and a reading of the opinions seems to sustain the claim of the plaintiff, but a careful reading of them will show that it was unnecessary for the court to decide that a corporation would be liable without negligence for an injury to the improvements on any property. In the case of *Cincinnati* v. *Penny*, 21 O. S., 499, those cases are reviewed

by Judge McIlvaine, who delivers the opinion of the court, and are limited in their doctrine to an injury to the land. The syllabus is:

"As a general rule, a municipal corporation is not liable for injuries to buildings on lots abutting upon streets and alleys, resulting from the improvements of such streets or alleys, or from their appropriation to a public use, provided its officers and agents, in making such improvements or appropriation, act within the scope of their authority, and without negligence or malice."

In *Keating* v. *Cincinnati*, 38 O. S., 141, where the city was held liable for changing the grade of a street along a hillside whereby the plaintiff's land was caused to slide out, to the injury of his lot and buildings, the court there cite these same cases, and in referring to the case of *Gilmore* v. *Driscoll*, 122 Mass., 199, they say, quoting from the opinion:

"This unqualified rule is limited to injuries caused to the land itself, and does not afford relief for damages by the same means to artificial structures. For an injury to buildings, which is unavoidably incident to the depression or slide of the soil on which they stand, caused by the excavation of a pit on adjoining lands, an action can only be maintained when want of due care or skill, or positive negligence, has contributed to produce it."

And the court further say:

It is upon this principle that the *City of Cincinnati* v. *Penny* (21 O. S., 499) was decided. The city in that case was held exempt from liability for damages to buildings, because it was free from negligence in making the excavation. The same rule of liability for want of proper care and skill is held in *City of Quincy* v. *Jones*, 76 Ill., 232.

Second: As to the question of damages: It is contended that the court erred on that. The tenant, Mr. Roff, was a witness, and he was inquired of—

What did it become necessary to do with the brick floor that was in in the building at the time you entered into possession, to avoid as far as possible the injuries ocurring from the flooding of that floor?

That was objected to, and sustained, and it was stated that they expected to show that it was necessary to put in a concrete floor at an expense of $1,507.

On page 48 another witness called by the plaintiff was asked these questions:

" From what you knew of the building before the overflow at these different times, and what you know of the effects of that overflow, what would you say would be the difference, if any, in value before and after the overflow?"

That was objected to, and sustained, and they stated that they expected to prove by the witness that the difference in value would be 20% of the value of the property.

How much damage, in your judgment, was done to the property by reason of the saturation and effects of the overflow?

That was objected to, sustained, and they stated, "We offer and intend to prove by this witness that the actual damage to the piers and the damage resulting by the saturation of the piers, by these overflow, amounted to $1,500.

On pages 52 and 53 the testimony of the plaintiff himself is given by a deposition, and in the course of that examination he was inquired of as follows: The objections there and throughout the deposition do not appear, and the deposition was read in evidence and thereafter ruled out.

Q.  What was the value of that property in 1890, before these floods occurred?   A.   My impression.is that I gave $120 a foot; it was either $120 or $130, I don't remember exactly.

Q.  What was the cost of the building?   A.   I think it was $23,000 —the building.

Q.  Then what was the building and lot at that time worth?   A.   I think it was worth all that it cost.

Q.  How much less valuable, if any, was the property after the inundations occasioned by the overflow of the sewer into the basement?  A. That would be pretty hard for me to say, how much less.

Q.  I want a matter of judgment.   A.   I should say probably 20% on the cost of the building, anyway.

On the next page:

Q.  Was there any damage to them (the piers)?   A.   I think the great damage was the deposit of filth.

Q.  Tell us whether there was or was not any damage to the piers by their being saturated with the overflow of this water that came in there?  A.  I wouldn't be capable of judging as to that.

Q.  What was necessary to be done, or what did you do with the floor that was originally in the building?   A.   I removed the brick floor entirely, and put down cement.

Q.  Why did you do that?   A.   Oh, it couldn't be occupied, flooding the cellar with filth from the sewer.

Q.  What was the expense of removing the brick floor and replacing it by a cement floor.   A.   $1,504.

Q.  For what amount is the building renting, and for what length of time?   A.   It is rented for 10 years at 6 per cent on its cost, and they pay all taxes and insurance.

That is all of his testimony, except that on cross-examination he says that he never had examined the building after it was flooded, and that he based his 20 per cent on what he thought it would hurt the property as a tenantable property; so far as he knew, it hadn't hurt the walls at all. According to his cross-examination, his whole testimony amounted to nothing.

But it is claimed that the court did not adopt the correct rule of damages when it ruled out all this testimony with reference to damages.   We have examined that question with a little care, because it has been before this court once in the case of *Grasser* v.  *Toledo*, the opinion in which is to be found in 6 Ohio Circ. Dec., 782, and we still adhere to the opinion there. expressed.   None of these questions directed the attention of the witnesses to the facts and circumstances upon which they are allowed to pass an opinion; nor did any of them direct the attention of the witnesses to the kind of opinion they are allowed to express in actions of this character.    It is said in argument  that the rule which the court briefly laid down in the Grasser case is only applicable in appropriation cases. Where damage has been caused to real  property by the acts of public authorities or will be so caused, the issue to be tried is,  what the amount of the damage is to the property.   We think there can be no question, but that the amount of damages to be determined by the jury is, the difference in the value of the property before and immediately after the injury has occurred.   That is the issue submitted  to the jury; and that is arrived at by calling witnesses who know the value of the property before and who know the value of the property after the injury.   They give those two valuations to the jury, and nothing else.  They are not allowed to say what

the damage is, nor are they allowed to say how much less valuable whether injury has occurred or whether it is prospective—they are confined to giving the valuation; and before they can give the valuations, they must have had some experience, they must have examined the property in question, and have acquired some knowledge upon that point. A witness is called here in this case who is asked as to the value of this property after this injury occurred, who testified that he did not know anything about it, or what the injury was, or how it affected the building in question. Clearly, he was not a witness who could give an opinion, because he had no facts on which to base it, and he gave no facts to the jury. We think the rule is well settled. We cite one or two authorities only. In Jones on Negligence of Municipal Corporations, it is said in section 259:

"Where property is totally destroyed through the negligence of a municipal corporation, the damage recoverable is the value of the property; and if the property of an individual, whether real or personal, is injured, the measure of damage is ordinarily the difference in its value before and after the injury."

That is the issue submitted to the jury. That is not what the witness is to testify to, but he is to give the value before and the value after, and the jury will arrive at what will be the measure of damages. Sedgwick on Damages, section 243:

"One fundamental principle may be stated at the outset, and we shall find frequent examples of it as we proceed with our examination; and that is, that wherever the measure of damages involves the question of value, however much the market may be resorted to to determine what the value is, this resort is had, not as a conclusive test, but to aid in getting at that real value to which the plaintiff is entitled. What he is entitled to recover is the real value of the article of property, the time, the labor, or the services, as they would be if unaffected by the defendant's tort or if the defendant's contract had been performed.

So far there is no difference in the cases for breach of contract and actions in tort. In *Rhodes* v. *Baird*, 16 O. S., 574, in discussing casually this question, the court say—and this was an action for breach of contract:

"To the extent that the damages depended on the loss of the use of the property, its market value, at the time of the eviction, subject to the performance of the contract on the part of the plaintiff, furnished the standard for assessing the damages. If it had no general market value, its value should have been ascertained from witnesses, whose skill and experience enabled them to testify directly to such value, in view of the hazards and chances of the business to which the land was to be devoted."

In 45 O. S., 309, which was an action by the owner of property abutting on a public street of a municipal corporation, to recover against a railroad company that was permitted to put its track in the street with the assent of the corporation, witnesses were permitted, against objections, to testify how much less per year was received as rent for the property affected since than before the track was laid in front of it; to give their opinions concerning the amount of damages sustained; and also their opinions as to difference in value of the property with the track in the street and if it were some other place. This was held to be error. On page 322 the court say:

"It is too well settled in this state to admit of controversy that the true rule of damages in such cases is the difference in the value of the prop-

erty affected before and the value after the location of the railroad, and that is to be determined by the jury in the light of the facts established by the evidence, and not upon the mere opinion of witnesses, except so far as opinions may be received upon questions of value."

There is a long discussion of this matter in that case. Questions were asked substantially like those in the case at bar—"How much less valuable will your land be in consequence of this appropriation?"—that being an appropriation case; and the rule is laid down that the points to which the witnesses are to be directed are the value of the property before and the value of it after; the question all the time being for the jury to determine—and they are to determine it from these two facts submitted to them by the witnesses—how much less valuable was the property rendered in consequence of the injury to it?

We do not think that the plaintiff directed the attention of the witnesses in this case to that point, and we think that the court was entirely justified in sustaining the objections to that testimony, and that it was justified in instructing the jury to find a verdict for the defendant.

Therefore, the judgment will be affirmed.

*Cummings & Scott,* for Plaintiff in Error.

*C. F. Watts,* for Defendant in Error.