Speak, J.
Many phases of the controversy not heretofore referred” to appear in the record, and are argued by the learned counsel, but as we view the case it can be disposed of by a consideration of one question only. That is with respect to the effect of the failure on the part of the city to give the plaintiff notice of the proposed improvement. It will be recalled that the distinct finding of the circuit court is that she was not served with notice of the passage of the reso'ution to improve, and had no knowledge of its passage, or of the construction of the improvement, until after it was completed, although, as shown by the record, she was a resident of the county.
The section of the statute (2304) under which the improvement was made,- requires that twenty days -written notice shall be given the owners of property who are residents of the county. The object of that requirement seems to be twofold. One, as provided by section 2315, that the owner of abutting land may present a claim for damages which, the section provides, must be done within two weeks or he shall be barred from filing the claim or receiving damages. Another, that such landowner might have some opportunity to approach the council with respect to the character of the pavement which is to be laid, for ■while the statute makes no provision for a hearing *270 before council as to that, yet it seems not only reasonable but hig'hly proper that the citizen should not be-prevented from giving his views and wishes to his: own representatives with respect to the kind and. character of the work for which he, with others in like situation, is to pay. A cognate section (2327), while it provides that proceedings with respect to-improvements shaM be liberally construed to secure’ a speedy completion of the work at reasonable cost,, and the speedy collection of the assessment after the time has elapsed for its payment, and merely formal objections shall be disregarded, provides further “but the proceedings shall be strictly cons-true’d in favor of the owner of the property assessed or injured, as to the limitations on assessment of private-property, and compensation for damages sustained.”
Without going at large into the question of plaintiff’s probable damages, it is. apparent that the proposition before council and the scheme as carried out, resulted in depriving a portion of plaintiffs land of its lateral support. The right of lateral support is held to be, not a mere easement, but as part of the owner’s property in the land. It is regarded as a right of property which necessarily and naturally attaches to the soil, and passes with it. As stated by Dickman, J., in Burgner v. Humphrey, 41 Ohio St., 340: “According to the doctrine held by the courts, as summarized by an approved text writer [Woods’ Law of* Nuisance] the right which the» surface has to support, is a part of the freehold and not an easement.” That the right exists as against municipal corporations as well as individuals is distinctly recognized in Keating v. Cincinnati, 38 Ohio St., 141, where White, J., remarks: “In this state private property ,is entitled to the same protection against all classes *271 of corporations as against natural persons, subject to the right of appropriating such property to public use upon the terms of making full compensation,” and, applying the principle, the court sustained a judgment awarding compensation to the plaintiff because the city, in making a street along a hill-side, so excavated the ground in the street as to cause the land above to slide and injure his lot. The judge also cites with approval and quotes' from the two Massachusetts cases cited below. That is, the right to lateral support is property. So that, if in the making of an improvement by a municipality excavations are made and the soil of the land of an individual gives way in consequence of being deprived of its lateral support, there is a taking and the owner is entitled to compensation. In Pumpelly v. Green Bay Co., 13 Wall., 166, the la w is held thus: “By the general law of European nations and the common law of England it was a qualification of the right of eminent domain that compensation should be made for private property taken or sacrificed for public use. And the constitutional provisions of the United States and ©f the several states which declare that private property shall not be taken for public use without just compensation were intended to establish this principle beyond legislative control. It is not necessary that property should be absolutely taken, in the narrowest sense of that word, to bring the case within the protection of this constitutional provision. There may be such serious interruption to the common and necessary use of property as will be equivalent to a taking within the meaning of the constitution.” The case is from Wisconsin, and the constitution of that state is the same in effect as ours though differing in phraseology. See also Lewis on Eminent Domain, *272 section 151; Humphries v. Brogden, 12 Ad. & L. N. S., 739; Foley v. Wyeth, 2 Allen, 131; Gilmore v. Driscoll, 122 Mass., 199; Stevenson v. Wallace, 68 Va., 77; Dyer v. City of St. Paul, 27 Minn., 457; Armstrong v. City of St. Paul, 30 Minn., 299; Stearns v. City of Richmond, 88 Va., 992. No duty devolves upon this court, any more than was devolved upon the circuit court, to adjudicate the matter of the plaintiff’s possible damages. Neither court has jurisdiction to pass upon that question. Indeed we do not need to find, and we do not attempt to find, that she suffered damages. It suffices if it appear that, under the circumstances, she had a legal right to make a claim for damages and to have such claim passed upon by a jury.
We cannot too often recur to our organic law. Private property shall ever be held inviolate but subservient to the public welfare. If taken for roads open to the public without pay, a compensation shall be made to the owners in money, and that compensation shall be assessed by a jury. It is not required, with respect to roads, as generally, that compensation shall first be made, and so the general assembly has provided, sections 2316, 2321, that the assessment of damages may be had before the improvement is made, or after, and this is not unconstitutional. Toledo v. Preston, 50 Ohio St., 361. But the constitution, and the statute as well, imposes the imperative duty on the municipality to go forward in a proper proceeding and have the compensation assessed, and pay it. As remarked by Bradbury, J., in the case last cited: “The statute under consideration, however, only contemplates a delay until the injury shall be fully accomplished ; for, until the improvement has been completed, it is, perhaps, not always practicable to ascer *273 tain with certainty the extent of the injury, the fill ■or excavation, as the case may be, will cause; in fact the injury has not been completed until then; and a delay of the proceedings until that time, we do not think, necessarily conflicts with that provision of the constitution, before quoted, which provides that the administration of justice shall neither be denied nor delayed. No doubt a municipality should be required to proceed in good faith and with reasonable diligence with the work of improvement.”
Construing-these sections of the statute in the light of the constitution, it seems apparent that the city has proceeded, respecting the rights of the plaintiff, wholly without authority of law. It has undertaken to impose an onerous burden on her without complying with the very first step respecting her made incumbent upon it by statute, and has, by its action, prevented her from having any voice in the choice of methods, resulting, as would naturally be supposed under the circumstances, in fastening upon the street the most expensive kind of pavement, running to over $8.00 per foot front; it has cut down the street in front of a considerable portion of her property so that it stands about ten feet above the street level, and all that upon a street not built upon, and lying at the extreme limit of the corporate boundaries; it has, besides, deprived her of the opportunity of presenting a claim for damages and of having that claim, in accordance with the statute and the constitution, passed upon and determined by a jury. And now it proposes, according to the admitted allegations of the pleadings, if these thousands of dollars be not paid, to proceed by the process of a treasurer’s sale as for delinquent taxes, and sell her land to the highest bidder. A more gross abuse of corporate power can hardly be *274 conceived. No such case has been found in the books, so far as we have discovered, because probably no such, case has ever before arisen.
But it is said that she might have proceeded herself, by an independent suit, to recover her damages. This proposition is without merit. She did not have to.. No such duty devolved upon her. The city had taken her property, and it was incumbent upon it to so conduct its improvement proceeding as to result in an ascertainment of her damages, or an adjudication that none had been sustained, in the proper forum, and this, to be commenced, in the language of the statute itself, if not sooner, at least “within ten days after the completion of such improvement.”
Again it is urged that even though plaintiff had no notice and was thus prevented from making application for damages, yet that the curative sections of the statute affords her ample relief, so that if an action were brought for the collection of the assessment, or-to enjoin its collection, the court upon trial could do full justice, having the power to take all matters into consideration, and render such judgment as in equity and good faith ought to be rendered. The trouble-with this proposition is the one suggested as to the claim in the paragraph above; the landowner is entitled to a jury to pass upon the claim of damages, and no provision is made for a jury in either of the cases supposed. Nor is the situation covered by the curative section (2289) as claimed. The failure to give the notice is not a technical irregularity, nor a technical defect. It goes to the very substance of the proceeding inasmuch as it deprives the landowner of valuable rights secured as well by the constitution as by the statute. In fairness the owner ought to have the damages, if any, awarded and paid by the city, so that *275 the same could he used in paying the assessment, and such owner should not be driven to an independent action for damages, nor to seeking a remedy through three appraisers; and such is the spirit of the statute. And we should not forget, as already found, that section 2327 enjoins a strict construction “in favor of the OAvner of the property assessed or injured, as to the limitations on assessment of private property, and compensation for damages sustained.” Among the rights thus to be strictly construed in favor of the owner is the right to have the question of compensation for damages determined by a jury, and that, too, at a time so near the levying of the assessment, upon the property as Avill enable one hand, pro tanto, to pay the other.
Another proposition is urged. Plaintiff’s predecessor in title signed a petition for the improvement, and it is claimed that as to that lot she was not entitled to notice, and hence the plaintiff was not so entitled. This is not tenable for the reason that the. signing of a petition does not waive either notice or the right to damages, unless expressly so stated, and no such Avaiver is found in the petition in this case. The owner may sign a petition and the resolution may never be passed by council, or may be passed many months after the petition is presented. There is, therefore, no certainty when the resolution Avill be passed, and when the time for making a claim for damages Avill expire. The statute makes no exception as to notice by reason of the owner liaA’ing signed the petition, and the courts should not engraft upon it such exception.
It is further claimed that the case is ruled for the defendant by the case of Upington v. Oviatt, Treas., 24 Ohio St., 232. A hasty reading of portions of that *276 case might give color to the claim, but a careful study of the whole case makes it clear, we think, that it has but little, if any, bearing upon the case at bar. There were a number of defects in the proceedings of council which were attacked as fatal to the right to make the assessment. One was that the preliminary resolution was not properly published in that it gave notice of an ordinance passed May 9, 1870, establishing the grade of the street, which ordinance had been in effect repealed and succeeded by one passed May 16, 1870, to change and establish the grade, the publication thus giving notice that the street would be graded ■according to the ordinance of May 9, whereas the work was done under the later ordinance. The court field that under the provisions of the curative act |'( the same substantially as the present section 2289), the faulty publication should be regarded as an irregularity or defect which did not render the proceeding entirely void. The court did, however, for that and other defects and irregularities, enjoin the collection of the assessment, but without prejudice to the making of another assessment according to law. But there are other features of the case which fully warrant the judgment rendered and which, at the same time, differentiate it from the case at bar as to a vital ■question. It appears from the record, asserted by ■counsel for the defendant and not questioned elsewhere in the report, that the plaintiff had stood by for more than a year, seeing the work progress from month to month, without objection, and that he had, in fact made a claim for damages and received the money. No wonder the court found that he ought to .bear the proper proportion of the reasonable value of the work actually done which had benefited his propel»
*277 The case of Welker v. Potter, 18 Ohio St., 85, has more bearing upon the question at bar. It is there held (1) that “the adoption of the resolution declaring the improvements necessary, and the publication of the same, as required in the act, are conditions precedent to the exercise of the authority to pass a valid ordinance for the improvements, or make an assessment on the adjoining property to pay for them.' (2) The failure to comply with such precedent, conditions: is hot merely an irregularity or defect in the proceedings, provided for in the curative portion of the act. The irregularity or defect thus provided for is such as occurs in the exercise of lawful authority by the council.” Following this case, and to like effect, is Stephan v. Daniels, 27 Ohio St., 527. See, also, Anderson v. Commissioners, 12 Ohio St., 635, and especially the opinion of Gholson, J., pages 644, and’, following. It is true, as pointed out in the opinion in Upington v. Oviatt, supra, that the statute in force when the improvement in the Welker case was made,, in terms provides that the council had authority to-proceed to pass the ordinance to improve only after-the preliminary steps, including notice, had been-: taken. From this it is insisted that in this respect' the present statute is different, and hence the rule; of the Welker case does not apply. True, the: phraseology is different, but, taking the statute as a whole, we see no difference in legal effect. Section. 2316 provides that at the expiration of the time: limited for filing claims for damages, that is, two* weeks after the service of the notice, the council shall determine whether it shall proceed with the improvement, “and if it decides to proceed therewith an ordinance for the purpose shall be passed,” etc. That.is,., putting it negatively, the council shall not proceed to, *278 pass tbe ordinance until two weeks after tbe service of notice. If, therefore, there is no service of notice, the time required has not elapsed and there is no authority to pass the ordinance, and if no such authority, then no jurisdiction. It seems reasonably cer-. tain that the doctrine of Welker v. Potter is applicable to the present case, and if so it settles it absolutely. This conclusion is in accord with the doctrine of Cincinnati v. Sherike, 47 Ohio St., 217, where it is held that section 2327 “requires that a strict construction be placed upon the proceedings by which it is sought to deprive the owner of his right to damages for property taken for, or injury by, the improvement.” It is also in accord with the general rule in this state, that while the proceedings of inferior tribunals, those of special and limited jurisdiction, (except on questions involving their right of jurisdiction,) will be liberally construed, this rule, as held in Harding v. Trustees, 3 Ohio, 227, being necessary from a conviction that a different course would not only destroy their usefulness, but render them in a great degree deceptive and mischievous, yet upon the question of jurisdiction itself a strict construction is required, and especially where the object is to take private property by a summary proceeding under the statute, in which case the rule is just as well established that the steps necessary to acquire jurisdiction must be strictly pursued, and when notice to the party, before action taken upon Ms rights, is required, isuch notice is an essential condition to the exercise of jurisdiction.
These considerations lead to the inevitable conclusion that the giving of the statutory notice to the resident landowner prescribed by section 2304, substantially as therein required, is a condition to the obtain *279 ing' of jurisdiction by council over tbe person .and property of such resident, and that where council proceeds without compliance with this requirement, and such owner has not notice otherwise, such failure is not cured by the curative sections of the statute, and its action, as affecting such owner, in making the assessment sought to be levied, is wholly without legal •effect.
The judgment of the circuit court will be reversed, and final judgment rendered here perpetually enjoining the collection of any part of the assessments.

Reversed.

Burket, C. J., Davis, Price and Grew, JJ., concur.