Sosman, J.
Plaintiffs Roy and Anita Rubin have brought the present action complaining that water from adjacent property is flowing onto and damaging their property and that a retaining wall on that adjacent property is in danger of imminent collapse onto their property. Named as defendants are Walpate Construction Management, Inc. (the developer that allegedly made the alterations to the property that resulted in these problems) and Tjokra and Patricia Sandjaja (the current owners who acquired the property from Walpate). Plaintiffs’ claims are for failure to provide lateral support (Count I), nuisance (Count II), negligence (Count III), trespass (Count IV) and equitable relief (Count V). The Sandjajas have moved to dismiss all claims as against them. For the following reasons, the Sandjajas’ motion to dismiss is ALLOWED as to Counts III and IV and DENIED as to Counts I, II and V.
Facts
Plaintiffs Roy and Anita Rubin own property located at 55 Rosalie Road in Newton. In 1997, defendant Walpate Construction acquired abutting property located at 195 Country Club Road. The two properties are separated by a seven-foot retaining wall, with plaintiffs’ properly situated below that retaining wall. The wall itself is located entirely on the 195 Country Club Road parcel owned by Walpate.
Walpate proceeded to demolish the house that was on the 195 Country Club Road property and construct a new house. Plaintiffs allege that, in the course of that construction, Walpate altered the grade of the land and thereby directed additional water flow spilling over onto plaintiffs’ property and causing damage. Plaintiffs also allege that the retaining wall is in danger of collapse. In October 1998, plaintiffs complained to Walpate about these alleged problems, demanding that Walpate restore the original grade of the property and repair the retaining wall. Walpate failed to do so, and plaintiffs filed the present action against Walpate on December 17, 1998.
On January 29, 1999, Walpate sold the property to defendants Tjokra and Patricia Sandjaja. On March 15, 1999, plaintiffs amended their complaint to add the Sandjajas as defendants. The amended complaint does not allege any new or additional acts on the part *378 of the Sandjajas, other than their purchase of the property after Walpate had completed the renovations and alterations of which plaintiffs complain.
Discussion
I.Lateral Support
The Rubins invoke the obligation to provide “lateral support” as the basis for their claim with respect to defendants’ duty to repair and maintain the allegedly collapsing retaining wall. A landowner is entitled to “the support of the land adjoining,” and therefore excavations on adjoining property that would undermine a plaintiffs land or cause it to collapse give rise to a claim for damages and/or injunctive relief. See Gorton v. Schofield, 311 Mass. 352, 356-59 (1942); Gilmore v. Driscoll, 122 Mass. 199, 201 (1877); Ahern v. Warner, 16 Mass.App.Ct. 223, 226 (1983).[1] The obligation to provide lateral support is imposed not only on the party that performed the excavations undermining a plaintiffs land, but on subsequent owners of the property, who have an ongoing obligation to maintain and repair the retaining walls or other structures that provide the necessary support following the excavations. Gorton, supra.
Massachusetts cases involving the doctrine of lateral support have, to date, all involved fact patterns where the plaintiffs land is at the higher elevation and where the plaintiffs land has collapsed or is in danger of collapse. This case presents the mirror image of the problem, as the Rubins allege that the defendant’s land is in danger of collapsing onto their land. They do not complain that their own land is being undermined or is in danger of collapse.[2] In that sense, defects in the integrity of the retaining wall do not deprive plaintiffs’ land of any needed “support.”
However, it is appropriate to apply the principles inherent in the doctrine of lateral support to this fact pattern. The doctrine rests on the following principle:
The right of an owner of land to the support of the land adjoining is jure naturae, like the right in a flowing stream. Eveiy owner of land is entitled, as against his neighbor, to have the earth stand and the water flow in its natural condition . . . [I]n the case of land, which is fixed in its place, each owner has the absolute right to have his land remain in its natural condition, unaffected by any act of his neighbor; and, if the neighbor digs upon or improves his own land so as to injure this right, [the owner] may maintain an action against him, without proof of negligence.
Gilmore v. Driscoll, 122 Mass. 199, 201 (1877). The “natural condition” of the Rubins’ land would surely be adversely affected if earth from the Sandjajas’ property spilled onto it from a collapse of the Sandjajas’ allegedly ill-maintained retaining wall. To prevent that injury to their land from occurring, the Rubins may seek injunctive relief with respect to the maintenance of the retaining wall.
Other jurisdictions, where this variant of the lateral support obligation have been presented, have recognized such a right.
An owner who alters the grade of his land to a level above his neighbor’s land is under a duty to keep the fill used from falling or sliding onto the adjoining parcel. To enforce this duty, a court may require such landowner to build a retaining wall entirely on his own property to keep the soil within the boundaries of his lot.
Tortolano v. DiFilippo, 349 A.2d 48, 51 (R.I. 1975). See also Sime v. Jensen, 7 N.W.2d 325, 327 (Minn. 1942), and cases cited therein. This form of an action requiring defendants to provide “lateral support” for their own property should be recognized in Massachusetts as well.[3] Accordingly, defendants’ motion to dismiss Count I is denied.
II.Nuisance
“A private nuisance is actionable when a property owner creates, permits or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another.” Asiala v. Fitchburg, 24 Mass.App.Ct, 13, 17 (1987). With specific reference to nuisance stemming from uses of land that affect the flow or discharge of surface waters, “each possessor is legally privileged to make reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable.” DeSanctis v. Lynn Water & Sewer Commission, 423 Mass. 112, 116 (1996), quoting Armstrong v. Francis Corp., 20 N.J. 320, 327 (1956). In determining reasonableness of defendant’s use of his property, the trier of fact is to consider the amount of harm caused, the foreseeability of that harm, the purpose or motive with which defendants acted, and whether the utility of defendant’s action outweighs the gravity of the harm caused. Id.
This assessment of “reasonableness,” and the weighing of the factors on which that assessment must be based, can not be made from the complaint alone and determined adversely to plaintiffs. The complaint alleges that defendants’ “interference with the natural flow of water was unreasonable” and that the harm to plaintiffs property was both “foreseeable” and “unreasonable.” The Sandjajas, as current owners, are the ones now maintaining and continuing the condition that gives rise to that alleged “unreasonable” interference. The complaint states a claim for private nuisance as against the Sandjajas. Accordingly, defendants’ motion to dismiss Count II is denied.
III.Negligence
Plaintiffs agree that their negligence claim has been made only as against Walpate Construction, not the *379 Sandjajas. Therefore, defendants’ motion to dismiss Count III is allowed.
IV. Trespass
Plaintiffs claim that defendants are liable in trespass for having “caused water to enter onto” their land. Trespass is an intentional tort, requiring plaintiff to prove an “affirmative voluntary act” on the part of defendant. United Electric Light Co. v. Deliso Construction Co., 315 Mass. 313, 318 (1943). When the trespass is accomplished by having objects enter onto plaintiffs land, there is some affirmative act on the part of defendant that caused the offending objects to cross onto plaintiffs land. See Fenton v. Quaboag Country Club, Inc., 353 Mass. 534 (1968) (golf balls hit onto plaintiffs property), Hennessy v. Boston, 265 Mass. 559 (1929) (baseballs hit onto plaintiffs property).
In the present case, plaintiffs have not alleged any affirmative act on the part of the Sandjajas that has caused the water to go onto the plaintiffs’ parcel. The alterations in the grade of the land that allegedly diverted the water were made by Walpate, not the Sandjajas. All the Sandjajas have done is failed “to terminate the continuing entry of water.” The complaint does not allege any affirmative act on the part of the Sandjajas that has caused or contributed to the alleged flow of water. Compare Kattor v. Sabatini, 4 Mass.App.Ct. 835, 836 (1976) (defendants liable for trespass after constructing drainage system that channeled water onto plaintiffs land). The Sandjajas’ liability with respect to the water runoff may be pursued under a theory of private nuisance based on alleged “unreasonable use” of their property, as discussed above. However, in the absence of any affirmative act on the part of the Sandjajas in directing the water towards the plaintiffs’ property, the trespass count must be dismissed as to them.
V. Equitable Relief
Plaintiffs seek injunctive relief requiring defendants to repair and maintain the retaining wall and to stop the flow of excess water onto their land. Equitable relief is available to enforce the obligation of lateral support and to abate a nuisance. Where plaintiffs’ claims for lateral support and for private nuisance may go forward, they may seek equitable relief as part of those two claims. Accordingly, the motion to dismiss Count V is denied.
ORDER
For the foregoing reasons, the Motion of Defendants Tjokra Sandjaja and Patricia Sandjaja to Discuss Plaintiffs’ Amended Complaint is ALLOWED as to Count III and Count IV and DENIED as to Count I, Count II and Count V.

 There is much hoary authority for the proposition that the damages recoverable for failure to provide lateral support are limited to the damage to the land itself and may not include the damage to any structures on plaintiffs land. See Triulzi v. Costa, 296 Mass. 24, 27 (1936); Kronberg v. Bulle, 247 Mass. 325, 328 (1924); Gilmore, supra, and cases cited therein. In the present case, plaintiffs seek only an injunction with respect to the retaining wall, as no actual collapse has yet occurred. The court is therefore not confronted with the issue of whether plaintiffs have adequately alleged damage to their “land” as opposed to damage to “structures.”

 The complaint also does not specify when the retaining wall was constructed or who constructed it. By implication from the allegation that the wall is entirely on the Sandjajas’ property, one would infer that the alteration in the land that necessitated the construction of the retaining wall was done by some prior owner of the Sandjajas’ parcel. If, however, the need for the retaining wall was created by excavation performed by some predecessor in title to the Rubins, then it would be the Rubins’ obligation to provide lateral support to the Sandjajas’ property and the Rubins’ duty to maintain the wall, not vice versa. The doctrine of lateral support imposes an obligation on the party that has altered the land in the first place, requiring that the party doing the alteration provide some adequate alternative to maintaining appropriate support for any land that has been destabilized by the alteration.

 Even if the title “lateral support” is not the technically correct label for the cause of action being pursued, plaintiffs complaint should not be dismissed for “failing to state the correct legal theory applicable to the case.” Ahern v. Warner, 16 Mass.App.Ct. 223, 226 n.2 (1983), citing Gallant v. Worcester, 383 Mass. 707, 709-10 (1981).