Gants, J.
INTRODUCTION
Plaintiffs Roy and Anita Rubin (“the Rubins”) have brought this suit against defendants Walpate Construction Management, Inc. (“Walpate”) and Tjokra and Patricia Sandjaja (“the Sandjajas”), alleging, inter alia, failure to provide lateral support, trespass, nuisance, negligence, and breach of contract. The Rubins have now moved for summary judgment on Count VI (breach of contract as to Walpate) of their complaint. Walpate has cross-moved for summary judgment on Counts.I (failure to provide lateral support), IV (trespass), VI (breach of contract), and VII (fraud/misrepresentation).
*341 BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. See Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). The following are the relevant facts from the summary judgment record.[1]
The Rubins own and reside at the real property located at 55 Rosalie Road in Newton (“the Rubin property”). Abutting the Rubin property is real property located at 195 Country Club Road in Newton (“the Country Club property”), which was purchased in October 1997 by Walpate, a developer engaged in the business of purchasing and renovating properties for resale. At the time Walpate purchased the Country Club property, a stone and mortar retaining wall, approximately seven feet high, was located on the property near the boundary with the Rubin property, and a double-sided wooden stockade fence ran along the top of the wall.
When Walpate purchased the Country Club property, the home located there was a one-stoiy ranch with a walk-out basement. After the purchase, Walpate undertook renovations of the property. As part of the renovations, Walpate added a second story and an approximately eight-foot-by-twenty-foot addition in the back of the house.[2] The renovations approximately doubled the square footage of living area of the house. The Rubins contend that Walpate altered the elevation of the property during the course of the renovations.[3] It is undisputed that the grading of the landscaping surrounding the house was changed during the project.
The Rubin property is and always has been located downhill from the Country Club property. Walpate did not make any attempt to determine the natural flow of water over the Country Club property at any time prior to or during the renovation project. In June 1998, the Rubins first observed water cascading over the retaining wall. The Rubins later observed water flowing over the retaining wall on several occasions, both while raining and when not raining. Walpate’s president, Michael McCarthy (“McCarthy”), told the Rubins that any water runoff would subside after the grass planted during the construction work grew in the backyard of the Country Club property. On June 24, 1998, a backhoe working on the Country Club property broke through the retaining wall, causing the wall to collapse, with portions of the wall falling onto the Rubin property. On June 25, 1998, the Rubins contacted the Building Inspector for the Town of Newton to complain about the collapse of the wall and to demand that Walpate immediately repair it. The Building Inspector contacted McCarthy and instructed him to repair it immediately.
Prior to allowing Walpate access to their property to repair the wall, the Rubins orally expressed the following concerns: that all workers on the property be bonded and insured, that they work only during hours acceptable to the Rubins, that there be no materials and tools left in their yard at the end of the work day, that workers’ vehicles not block access to their driveway or shed, that the rebuilt section of the wall match the appearance of the part still standing, and that Walpate correct any problems with the fence that the Rubins had communicated to Walpate in the past. On behalf of Walpate, McCarthy verbally agreed to these conditions, and, in exchange for his agreement, the Rubins granted Walpate access to the Rubin property to repair the wall. After the first day of work, workmen’s tools and equipment were left on the Rubin property.[4] Because of this violation, the Rubins insisted that the parties enter a written agreement prior to granting Walpate access to the property again. On July 1, 1998, McCarthy signed the agreement on behalf of Walpate. The written agreement contained several additional conditions not contained in the original verbal agreement, but the consideration, permission to enter the Rubin property to make the repairs, remained the same.[5] Among the additional conditions, Walpate agreed to the following: to prune any dead branches from the large trees overhanging the Rubin property, to pay for the professional replacement of any damaged shrubs with mature plantings of the Rubins’ choice, and to modify the wooden fence on the wall so the metal poles and brackets would not be exposed on the Rubin property side.
The retaining wall was repaired by Walpate following the execution of the written agreement. The Ru-bins, however, complain that the repaired section of the wall is not the same height as the rest of the wall, that it does not have a concrete cap like the rest of the wall, and that it does not match the rest of the wall in color, depth, and quality of finish. The Rubins also contend, and Walpate admits, that Walpate did not change the location of the metal brackets and hardware on the wooden fence so that they would not be exposed on the Rubin property side.
On January 29, 1999, well after the retaining wall had been repaired, Walpate sold the Country Club property to the Sandjajas.
The Rubins contend that it will cost between $45,000.00 and $60,000.00 to complete in a satisfactory manner the work Walpate was supposed to do pursuant to the agreement.
DISCUSSION
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 232 (1997). A moving party which does not bear the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving party’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. *342 Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). For the purpose of Walpate’s motion for summary judgment, the court must assume the truth of the facts set forth in plaintiffs’ submissions and must draw any inferences favorable to plaintiffs. Community Nat'l Bank v. Dawes, 369 Mass. 550, 553-56 (1976).
I. Plaintiffs’ and Walpate’s Cross Motions for Summary Judgment as to Count VI (Breach of Contract by Walpate)
The Rubins contend that there is no genuine issue of material fact that Walpate breached at least two relevant terms of the July 1, 1998 written agreement by (1) failing to modify the stockade fence so that metal poles and brackets are not exposed on the Rubin side, and (2) by failing to rebuild the stone retaining wall “to match the existing wall.”
In a dispute regarding the meaning of a contract, the first step is to examine the language of the contract itself. If the language of the contract is clear and without ambiguity, then extrinsic evidence as to its meaning is unnecessary and, indeed, inadmissible because such evidence could serve only to contradict, vary, or broaden an otherwise clear agreement. See Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997) (citing Gifford v. Gifford, 354 Mass. 247, 249 (1968)). Extrinsic evidence, commonly referred to as parol evidence, is admissible only if the contract contains some ambiguity that may be clarified or resolved through consideration of such evidence. See id.
The language of the written contract is not clear as to what it means for the stone retaining wall to be “rebuilt to match the existing wall,” so extrinsic evidence must be considered to discern the intent of the contracting parties. If the parties intended “match” to mean that the rebuilt wall was to be identical to the existing wall, then there is no dispute that Walpate fell short. Walpate admits that the repaired section lacks the two to three inch concrete cap, thus accounting for the difference in height, and that the color of the mortar in the repaired section differs from that in the existing wall. If, however, “match” meant simply that the repaired wall was to be similar in design to the existing wall, then Walpate holds the stronger hand. Walpate contends, and the Rubins do not deny, that the stones from the collapsed section of the original wall were used to repair the wall. Walpate also argues that the mortar used in the repaired section is the same as the mortar in the remaining section, and that any difference in color is attributable to the effects of weathering over time, a fact which Walpate contended it told the Rubins before beginning the repairs. Therefore, since there are differences of interpretation regarding the intended meaning of this provision, and since there are conflicts in the parol evidence as to what was intended by the parties with respect to this provision, the Rubins’ motion for summary judgment is denied with respect to that part of the breach of contract claim alleging breach of this provision.
In contrast, the language of the written contract is clear to the extent that it provides that “(t]he stockade fence will be modified so that metal poles and brackets are not exposed on the Rubin side.” This provision plainly sets forth Walpate’s obligation in this regard, and it is equally plain from the evidence that Walpate failed to satisfy that obligation. Therefore, with regard to this provision, the Rubins’ motion for summary judgment must be allowed unless Walpate succeeds in showing that there is an issue of material fact regarding the validity or enforceability of the contract. Indeed, if Walpate demonstrates that the written contract is invalid or unenforceable, then it would be entitled to summary judgment as to the claim alleging breach of this written contract.
Walpate offers two arguments in support of its position that the contract is invalid and unenforceable. First, Walpate argues that there was no consideration for the written contract because the only “consideration” the Rubins provided in return for Walpate’s promises was access to their property, and this was no consideration at all since Walpate had a statutory right to enter the Rubin property to repair the wall.[6] Under G.L.c. 266, §120B, a landowner shall not be deemed guilty of trespass or liable civilly for damages if he enters the property of an abutting landowner over the latter’s objection when necessary to maintain or repair buildings located close to the abutting land. Before a landowner may enter abutting land under this provision, he must first request the permission of the abutting landowner and, if that permission is denied, post a bond with the local Chief of Police in the amount of $ 1,000.00 to protect the abutting landowner from damage caused by the entry. Id. Therefore, the consideration for the written contract was not only the Rubins’ permission to enter onto the property but also the avoidance of the need for any bond. While this consideration may have been of lesser value than the value of the services promised by Walpate, the law does not require consideration to be equal or even comparable in value; it need simply be something of value. That minimal requirement was satisfied here.
Walpate also argues that the written contract lacked consideration because the Rubins had already granted access under the prior oral agreement, and could not provide the same consideration again while making additional demands upon Walpate. The problem with this argument is that there is evidence in the record that Walpate breached the initial oral agreement. If Walpate did indeed breach the initial oral agreement, the Rubins were excused from performance. Walpate may have made the additional promises in the subsequent written agreement so that the Rubins would excuse Walpate’s breach of the prior oral agreement and once again permit Walpate to enter the properly.
Second, Walpate argues that the contract is invalid because it entered the agreement under economic duress. To show economic duress, a defendant in a contract action must show that it involuntarily accepted the *343 terms of another, that the circumstances permitted no other alternative, and that the circumstances were the result of unfair, wrongful, and coercive acts of the plaintiff. International Underwater Contractors, Inc. v. New England Telephone and Telegraph Co., 8 Mass.App.Ct. 340, 342 (1979). Walpate contends that the Rubins’ calling the Building Inspector and subsequently withholding access to their property constituted the necessary “wrongful” act. While the Rubins may have been playing hardball with Walpate, there is no evidence in the record that they acted unfairly or wrongfully. Nor is it true that Walpate had no alternative under the circumstances. As noted above, Walpate lawfully could have obtained access to the Rubins’ property under G.L.c. 266, §120B. It is not the Rubins’ fault if Walpate was unaware that it had this right.
In sum, this Court, as a matter of law, rejects Walpate’s defenses of lack of consideration and economic duress. As a result, Walpate’s motion for summary judgment must be denied, and the Rubins’ motion for summary judgment must be allowed to the extent it alleges breach of the contractual provision that ”[t]he stockade fence will be modified so that metal poles and brackets are not exposed on the Rubin side."
II. Defendants’ Motion for Summary Judgment as to Counts I (Failure to Provide Lateral Support), IV (Trespass), and VII (Fraud /Misrepresentation)
Walpate’s argument that it is entitled to summary judgment on Count I is essentially a rehashing of its argument in support of its motion to dismiss. Walpate argues that a duty of lateral support is owed only by the owner of a lower lying parcel to the owner of an adjacent higher lying parcel. Walpate argues that since it is undisputed that the Country Club property has always been located uphill from the Rubin property, irrespective of any change of grading undertaken by Walpate, Walpate and the Sandjajas have never owed the Rubins a duty of lateral support and the Rubins are not entitled to relief under this count. While defendants make a valid argument in pointing out that Massachusetts courts have never recognized such an inverse lateral support cause of action, it is the same argument they made before the Court on their motion to dismiss. Since the facts established by the summary judgment record do not differ in any significant way from the allegations of the complaint with respect to this count, there is no new factual basis for granting summary judgment on this count and I am not inclined to reverse the prior legal determination of the Court (Sosman, J.) allowing this count to go forward [ 10 Mass. L. Rptr. 377). Walpate’s motion for summary judgment as to Count I, therefore, must be denied.
With regard to count IV (trespass), Walpate argues that the Rubins will be unable to prove either intentional or negligent trespass. Walpate argues that it is not responsible for the regrading work which allegedly resulted in increased water runoff from the Country Club property onto the Rubin property. Rather, a contractor hired by Walpate is entirely responsible for the regrading and any damages to the Rubin property which may have resulted from its work. While it is true that Walpate is not vicariously liable for the misconduct of an independent contractor, it may still be vicariously liable for the negligence of its own employees, including any negligent supervision of independent contractors. Since there are genuine issues of material fact as to whether Walpate was negligent in permitting regrading that foreseeably would have posed a risk of increased water runoff from the Country Club property onto the Rubin property, summary judgment on this count must be denied.
Count VII (misrepresentation/fraud) of the complaint is premised entirely on the Rubins’ argument that, at the time Walpate and the Rubins entered into the written agreement, Walpate had no intention of fulfilling certain provisions of the agreement. A statement of present intent as to future conduct may be actionable where the statement misrepresented the actual intent of the speaker and where another relied to his detriment on the statement. See, Starr v. Fordham, 420 Mass. 178, 187 (1995). Mere proof that the promise was not carried out, however, is not sufficient to prove present intent. Botti v. Iovino, 337 Mass. 775 (1958). In the case at bar, the Rubins have not presented any evidence that Walpate never intended to perform certain provisions of the contract beyond the mere fact that Walpate ultimately did not perform those provisions. Moreover, the Rubins have identified no harm to them resulting from their reliance on Walpate’s promises. As such, Walpate’s motion for summary judgment on this count is allowed.
ORDER
For the reasons stated above, this Court hereby ORDERS that:
The Rubins’ motion for summary judgment on Count VI (breach of contract) is ALLOWED against Walpate to the extent Count VI alleges breach of the contractual provision that “(t]he stockade fence will be modified so that metal poles and brackets are not exposed on the Rubin side.” Beyond this, the motion is DENIED.
2. Walpate’s motion for summary judgment is DENIED as to Count I (failure to provide lateral support), Count IV (trespass), and Count VI (breach of contract), and ALLOWED as to Count VII (fraud/misrepresentation).

 The facts are undisputed except where noted.

 The parties dispute whether Walpate undertook renovations or built a completely new structure. This dispute over the proper characterization of the work that was done is irrelevant to this motion.

 Walpate states that it does not understand what the Rubins mean by this.

 Walpate does not deny that tools and equipment were left on the Rubin property.

 The written agreement signed by Roy Rubin and McCarthy, dated July 1, 1998, contains 13 separate provisions.

 Walpate also argues that the Rubins had “implicitly” given Walpate permission to enter on their property to repair the wall when they called the Building Inspector and demanded that Walpate be ordered to repair it. While Walpate is correct in pointing out that the Rubins must have known that Walpate would need access to their property to make the repairs ordered by the Building Inspector, it does not necessarily follow that by making this request the Rubins were implying that Walpate could have unfettered access.